GEORGE P. FINLAY, EXR., v. W. MERRIMAN, ADMR.

1. A suit was brought in the name of B. after his death, but no service procured on the defendants. At a subsequent term B.'s administrator was made a party plaintiff, and filed an amended petition, after which defendants were cited to answer the petition of the administrator. *Held*, that a plea in abatement, alleging the death of B. at the time of bringing the suit, was properly overruled; but the administrator should have been ruled to the payment of all costs before being permitted to carry on the suit.

2. A trustee for minors, who placed claims due them in the hands of solvent attorneys in good professional standing for collection, but who were made bankrupt by the late war, and were unable to pay over the amount collected to the trustee, will not be held liable to account for the trust fund, if he acted in good faith and used ordinary diligence to secure the debt.

3. When a trustee has acted with good faith in the exercise of a fair discretion, and in the same manner he would ordinarily do in regard to his own property, he ought not to be held responsible for any losses accruing in the management of the trust property.

ERROR from Calhoun. Tried below before the Hon. T. C. Barden.

Suit brought December, 1870, in the name of Theodore B. Green against George P. Finlay as executor of the last will of J. J. Holt, deceased, on an account for money received by Holt as guardian *ad litem* for the unknown heirs of Susan Green, deceased.

January 30, 1872, Walter Merriman was suggested as administrator of Green, and cause continued for service.

In February, 1872, Merriman filed an amended petition, alleging that Theodore B. was the husband of Susan Green, deceased, and that her children were all dead, without issue, and that Theodore, their father, inherited their interest in their mother's estate; seeking to charge Holt as guardian *ad litem* of the minors, and as the attorney appointed by the court.

Finlay was served on the fourth of March, 1872. He

pleaded in abatement of the suit that the record in the administration of Theodore B. Green showed that said Green was dead at the date of the institution of the suit. To this plea Merriman demurred. The demurrer was sustained, and Finlay excepted.

Finlay also plead a general denial, and a special plea, in which he alleged that at the date of the presentation of the claim against his testator, Theodore B. Green was dead; and that the claim was not sued on by any administrator within three months after its rejection. He further plead, specially, in avoidance, that the makers of the notes to Holt, guardian, etc., were residents of De Witt county; that Holt lived at Lavaca, in Calhoun county, at so great a distance as not to be able to give personal attention to the collection; that he, therefore, gave the collection to the Stewarts, who were skillful lawyers, in good standing, practicing in De Witt court; that after recovering judgment against the makers of the notes, payment was made to the Stewarts in 1860; that Holt knew nothing of this until September of that year, when, and after, he demanded the money of his attorneys; that the war coming on, the courts were closed and the collection of debts suspended; that, notwithstanding, in April, 1862, he, as guardian *ad litem*, filed suit against the Stewarts, and recovered judgment against them for the sum of seven thousand three hundred and thirty-nine dollars and forty-eight cents; that at the time said notes were placed in the hands of the Stewarts, they were solvent and fully responsible, and possessed of large real and personal estates; that the judgment against them was still unsatisfied, although Holt had used due diligence to collect it, up to his death, which occurred in January, 1868; and that at no time from the date when Holt was informed of the collection of the notes, could he have collected the money from them.

To this plea Merriman also excepted. His exception was sustained by the court, and all of defendant's answer except the general issue was stricken out.

Verdict and judgment for the plaintiff.

*Stockdale & Proctor*, for plaintiff in error.

*O. Ellis*, for defendant in error.—We must regard Judge Holt as an attorney employed by the court for the collection of these claims (and he was so employed doubtless because he represented himself as the attorney of Theodore B. Green, the father of said minors), or he must be regarded as a special trustee, appointed by the court, with a view to his special qualifications, to collect the money due these heirs. There was nothing compulsory in the order of the court, and if on account of the distance of his place of residence, or on any other ground, it was impossible for him to execute the personal trust reposed in him, it was his right and duty to decline it, so that the court could have made another selection. Having accepted the appointment, with a view to the compensation contemplated by the order of the court, he undertook the personal collection of these claims, and in substituting another in his place did not relieve himself of the responsibility of his undertaking. "*Delegatus non potest delegare.*"

"An attorney is not relieved from responsibility, by his own employment of other counsel." (Smallwood v. Norton, 20 Maine, 33; Sherman & Redfield on Negligence, Sec. 218, 2d Ed.) "If the attorney delays to commence an action, and in the meantime the debtor becomes insolvent, and the debt is lost, he is liable to his client." Smedes v. Elmendorf, 3 Johns., 185; Sherman & Redfield on Negligence, Sec. 221, p. 264.)

"An attorney who neglects to take proper precaution, consequent upon a material fact affecting his client's in-

terests in a business pending, such, for example, as the death, marriage, or insolvency of a party, express notice of which is brought home to him, seems clearly guilty of negligence." (Stannard v. Ullithorne, 10 Bing., 491; 4 Moore & S., 359; Jacaud v. French, 12 East, 317; Sherman & Redfield, Sec. 225.)

*A. B. Peticolas*, also for defendant in error.

Walker, J.—The discussion of this case by counsel has taken a very wide range, and many interesting questions of law are raised upon the record. Most of these questions, however, have been decided in other cases by this court from time to time, and their redecision now is not considered necessary to the proper disposition of this case.

The following points may be noticed:

1. Did the District Court err in sustaining plaintiff's exceptions to defendant's plea in abatement?

2. Did the District Court err in sustaining exceptions of the plaintiff to defendant's answer, and striking out the same, save the general denial?

3. Did the court err in refusing or giving charges to the jury?

4. Was there error in the verdict of the jury, or in the judgment of the court rendered upon said verdict?

We are of opinion the plea in abatement, under all the circumstances and facts in this case, was properly overruled. The plea was not directed to any suit filed by Theodore B. Green, but to the petition of Walter Merriman, the administrator of Green's estate. A petition had been filed in December, 1870, in the name of Theodore B. Green v. George P. Finlay, executor of J. J. Holt's will, but Finlay was not served with process until March, 1872, and this process cited him to answer the petition of Merriman.

If suit was filed by mistake or otherwise in the name of Green after his death, Merriman, his administrator, should have been ruled to the payment of all costs before being permitted to carry on the suit as Green's administrator, and certainly it would be necessary that new process should be served on the defendant in the name of the proper party, and this appears to have been done.

The plea in abatement might have been to the jurisdiction of the court, to the person of the plaintiff or defendant, to the writ, or to the subsequent pleadings; but we do not think it would have been good if urged for any of these causes. As to the plea of three months limitation, we think this case is settled by Woods v. McMeans, 23 Texas, 486, and Pleasants v. Davidson, 34 Texas, 459.

Under these decisions the court did not err in ruling out this plea.

We now come to consider the ruling of the court on the plaintiff in error's special answer, and our conclusion upon this point of the case will probably render its further discussion unnecessary.

We must here refer to some matters of history connected with the origin of this case. At the spring term of the District Court of De Witt county, for the year 1854, one Cardwell, the guardian of John Kellogg, minor, filed his petition for partition of the estate of George W. and Rebecca Davis, deceased. From this petition it appeared that the heirs of Susan Green, residents of the State of Kentucky, were entitled to $\frac{9}{64}$ parts of the estate; that Theodore B. Green was the surviving husband of Susan; that she left as heirs of her body Margaret A., John H., Harriet N., Sydney R., and Luzelle A. Green, all minors. At the succeeding term of the court the late Hon. J. J. Holt was appointed guardian *ad litem* of the minor Greens and attorney of Theodore B. Green, their father.

Proceedings in this case were conducted to partition of

the estate and sale. The sale was made by a commissioner in 1855. The share of the Greens in the proceeds of the sale amounted to a little over $3000, for which two notes were given in an equal amount, secured by a mortgage to Holt, the guardian *ad litem*.

The court appeared to have made a special order that the notes and mortgage be made and delivered to Holt, who should collect the money, pay all the costs and expenses chargeable to the Greens, and pay the residue to them.

The notes having matured, Judge Holt placed them in the hands of Messrs. Wm. H. and Thomas R. Stewart, attorneys at law, for collection. The Stewarts collected the money in the year 1860, amounting to about $4600. Holt was not notified of the collection of the money until several months after it had passed into the hands of his attorneys.

About the first of September, 1860, he called upon them and demanded the money, which they failed, and have ever since failed, to pay over. These are substantially the facts averred in the special answer, to which exception was taken, and the exception sustained by the court and the answer ruled out.

Upon this ruling of the court the case must stand or fall. The answer contained a meritorious defense, and the defendant should have been permitted to offer his evidence under it.

We do not thus positively decide this question, as it is one of grave importance, without mature consideration and diligent research. We find no cases cited in the appellee's brief precisely applicable to the facts in this case. Holt was made, by the order of the court and his acceptance of the trust, a trustee for the heirs of Susan Green. His duties under the appointment required of him no more than ordinary diligence. There is not an insinuation

that Judge Holt has ever acted in bad faith in the premises. A trustee is not held to infallibility of judgment. Men of much less ability than Judge Holt are often called upon to act as trustees for minors, married women, and others whose funds are necessarily held by others in trust for their use, and to all such persons the courts, as is said in Thompson v. Brown, 4 Johnson's Chancery, 629, will extend great tenderness where it is clear that good faith has been observed.

The leading English case on this subject is that of Knight v. The Earl of Plymouth, reported in 3 Atkyn, 480. In this case Lord Hardwicke puts the case of a trustee who, holding funds in trust, invests the money in the public funds, which afterwards sink in value, or takes a security apparently good at the time, but which proves worthless. He says, there is no case in which, in the absence of *malafides*, the trustee has been held liable, and it is to this case that the remarks of Justice Story, in his Equity Jurisprudence, page 705, 5th edition, apply, and certainly he does not condemn the doctrine laid down by Lord Hardwicke, though he says, "The true results of the considerations here presented would seem to be, that when a trustee has acted with good faith in the exercise of a fair discretion, and in the same manner he would ordinarily do in regard to his own property, he ought not to be held responsible for any losses accruing in the management of the trust property; on the contrary, courts of equity have laid down some artificial rules for the exercise of the discretion of trustees which import extraordinary diligence and vigilance in the management of the trust property."

We do not understand Justice Story to approbate these artificial rules so laid down by equity courts. The authorities cited in appellant's brief, Stannard v. Ullithorne, 10 Bing., 491; 4 Moore & S., 359; Jacaud v. French, 12

East, 317; and Sherman & Redfield, Sec. 225, seem to contain some of these artificial rules, but we will not apply them to this case. There are many facts in the late history of the country which we are asked, and properly so, to consider in connection with this case.

At the time Holt placed the notes and mortgage in the hands of the Stewarts for collection they were regarded as safe and solvent attorneys. They appear to have been men of property, and for anything which appears to the contrary maintained a good professional standing before the public up to the time when the money came into their hands. The country was undergoing much more than the ordinary excitement of a presidential election; the results of that election foreshadowed themselves upon the public mind. Men were not thinking of the ordinary concerns of life; they were contemplating the dangers which portended a great and free government. The public mind was absorbed, and preparation was being made for the awful and sanguinary results which soon followed.

It is very true that in a time of peace and quiet, when business of all kinds was moving in its accustomed channels, the delay in bringing a suit from the first of September, 1860, to the eighth of April, 1862, would necessarily be regarded as an unreasonable delay, from which bad faith might be inferred, but during this time a great civil war had broken out, armies were marshaled in the field, every city, town and village, had become recruiting depots for soldiers, throughout the broad extent of the country. Men were determined upon war, battles were being fought, martial law was declared, the administration of the civil laws was suspended, and if ever the truth of the maxim *inter arma leges silent* was demonstrated it was then.

It is in vain to urge upon the mind of this court that it was negligence in Judge Holt not to urge the collection of

this money more vigorously during the period of the civil war. We were all witnesses of the great drama, here or elsewhere, and we are by no means satisfied from the evidence in this case that under the circumstances which surrounded the parties this money could ever have been made from the Stewarts after it had come into their hands and they had parted with it.

We think we are amply supported by authority in the opinion we have come to in this case. The English cases, Rowth v. Howell, 3 Vesey, 561; 1 Vesey, Jr., 41; and 5 Vesey, 141, are cases which lay down the same rule as that announced by Lord Hardwicke in Knight v. Earl of Plymouth.

It is unnecessary for us to notice other assignments for error in this case. We are perfectly unanimous in our opinion that this case be reversed and dismissed.

REVERSED AND DISMISSED.