GROESBECK COTTON OIL & COMPRESS COMPANY v. ROD OLIVER ET AL.

Decided November 24, 1906.

**1.—Receivers—Care of Funds—Ordinary Care.**

In a suit against a receiver and his bondsmen to recover funds belonging to the estate deposited by the receiver in certain banks and lost by the failure of said banks, held, that a charge to the effect that it was the duty of the receiver to use ordinary care and diligence to safely keep the funds that come into his possession, was correct.

**2.—Same—Art. 1462, Rev. Stats., Construed.**

Article 1462, Rev. Stats., has no reference to funds coming generally into

the hands of a receiver, but only to money deposited in court to abide the result of legal proceedings. Facts considered, and held to support a finding of the jury that a receiver used ordinary care and diligence in the custody of the funds belonging to the estate in his possession.

### 3.—Act of Employe—Not Chargeable to Employer, When.

The act of an employe of the receiver in refusing to allow intervenors in the suit to examine the books of the defendant company, was not chargeable against the receiver in the absence of evidence showing that the receiver authorized or ratified such act.

### 4.—Practice—Filing Briefs—Delay.

The transcript was filed in the court March 26, 1906; counsel for appellees agreed that appellants might have until fall to file their briefs; the briefs were filed November 6; appellees filed their briefs November 8, and on same day appellants filed a supplemental brief presenting additional assignments of error. Held, the motion of appellees to strike out the supplemental brief should be sustained in the absence of a sufficient excuse for not embracing said assignments in the original briefs.

Appeal from the District Court of Limestone County. Tried below before Hon. L. B. Cobb.

*S. R. Perryman* and *Richard Mays,* for appellants.—It is the duty of a receiver appointed by a court in this State to make a special deposit of any money coming into his hands as such receiver, and any loss caused by reason of his failure to do so renders him and the sureties on his bond liable. Sayles' Stats., art. 1462.

*Horace Chilton, Williams & Bradley* and *Ethridge & Baker,* for appellees.

RAINEY, CHIEF JUSTICE.—The appellants, Stillwell-Bierce & Smith-Vale Company, Carver Cotton Gin Company, Briggs Machinery & Supply Company, J. C. Weaver, Kentucky Refining Company, and Stubbs & May, in their own behalf and in behalf of other creditors, brought suit as intervenors in the matter of the receivership of the Groesbeck Cotton Oil, Gin & Compress Company, against the receiver, W. P. Brown, and the sureties on his bond as receiver, to wit: Rod Oliver, W. T. Campbell and Sol Nusbaum to recover the sum of $25,000, the amount of said bond, alleging in substance that said receiver had received sums of money in excess of $25,000, which money the said receiver had deposited in the bank of Oliver & Allen, the Groesbeck National Bank and the Barron Banking Company, where said money was allowed to remain until said banks failed and said money lost. That said banks were not at the time of the appointment of said receiver, nor since, sound and solid institutions, nor was there reason to believe that they or either of them were sound or solid institutions, and the receiver was grossly negligent in allowing the money to remain in said banks.

The defendants answered by general denial, and specially, that at the time said receiver deposited the money in said banks, and until their failure, he believed and the general public regarded them to be sound and solvent, and he had no reason to suspect otherwise. That he had no personal interest in said deposits, and after the failure he used the utmost diligence to regain said money and restore it to the estate.

Intervenors filed a supplemental petition, alleging in effect, that the receiver knew or could have known by the exercise of ordinary care that said banks were insolvent. That he knew that said banks were dominated, owned and controlled by Rod Oliver, party plaintiff in the receivership proceedings, and that he was seeking large sums of money from said Groesbeck Cotton Oil, Gin & Compress Company, and to foreclose certain alleged liens against the funds placed in said banks by said receiver. That at the time and long prior thereto and up to the failure, said Rod Oliver was in all kinds of speculations and schemes and that it was unsafe to deposit money in said banks. That in the proceeding against the Groesbeck Cotton Oil, Gin & Compress Company for appointment of receiver, said Oliver and the Groesbeck National Bank were litigants and were adversely interested to all the other creditors, which was known to said receiver at the time.

The trial resulted in favor of defendants, and interveners prosecute this appeal.

The evidence shows that in January, 1902, Rod Oliver commenced suit against the Groesbeck Cotton Oil, Gin & Compress Company, a corporation, and asked for the appointment of a receiver to take charge of the assets of said concern. W. P. Brown was appointed and qualified by taking the oath and executing the bond in suit. The powers conferred upon him by the court are such as are usually conferred. Brown in the course of his duties came in possession of about $50,000, which he deposited with the Groesbeck National Bank at Groesbeck, Texas, Oliver & Allen, a private bank, at Hubbard City, Texas, and the Barron Banking Company, at Thornton, Texas. $31,000 of said sum was deposited with the private bank of Oliver & Allen at Hubbard City. The Barron Banking Company was located about eight miles from Groesbeck, and Hubbard City, by railroad forty or fifty miles, but through the country a much shorter distance. Oliver was largely interested in all of said banks and was prominent in their management and control. These banks failed and the money deposited therein was lost. Rod Oliver owned the majority of stock in the Groesbeck Cotton Oil, Gin & Compress Company and before W. P. Brown was appointed receiver he agreed with Oliver that his fee as receiver should be $50 per month, and Oliver made his bond. L. L. Brown, a son of W. P. Brown, was working for the said compress company before the plant burned, after which the receiver was appointed; he continued in Oliver's employment and assisted his father in looking after the receivership matters. W. P. Brown employed as his counselors the attorneys who represented Oliver in the receivership suit, who were permitted to examine the books of the compress company, but on one occasion L. L. Brown, who had the books in charge, refused the attorneys of interveners permission to see them and an order of court had to be secured before they were permitted to do so. Up to the time of Rod Oliver's failure, which wrecked the said banks, he was regarded as a good financier and perfectly solvent.

W. P. Brown testified, and his testimony is not contradicted, as follows: "Lived in Limestone County fifty-five years; was county treasurer six years, county clerk ten years. Have known Rod Oliver forty years, intimately acquainted with him. He was considered a man of wealth

up to the time of his failure, and good business man, good financier, and regarded as perfectly solvent. I had no reason to believe otherwise up to the time of failure. Knew his partner twenty-five or thirty years; he was considered wealthy and solvent; stood as high as any man in the State; considered upright and honorable, and every one trusted him. I divided up the money; thought it best. I acted upon my confidence in him; I acted on my own judgment. The money was deposited to my account as receiver. No agreement as to length of time money should be in bank. I never had any information up to time of failure, that would cause me to think them insolvent. I sold a mill of the Groesbeck Oil Company at Thornton, and deposited the money with the Barron Bank there. That bank was considered perfectly solvent, and I believed it safe; never had any information to the contrary until the time of failure. Had one hundred dollars of my own money in Groesbeck bank; I lost it. When I was appointed receiver there was owing to the Groesbeck Oil Company insurance money, and companies had been garnished. Mr. Etheridge got the money. I had no interest to be served by these banks. I never requested or got accommodation from either. I agreed to serve as receiver for fifty dollars per month; no one ever objected to Messrs. Etheridge or Williams representing me. No one suggested the impropriety of their representing me. The deposits were to bear no interest. After the banks failed I did everything in my power to get the money. My attorneys prepared petition in bankruptcy against Oliver & Allen. Have been paid 50 percent of the money deposited with Barron Banking Company. Am still acting as receiver. Have proven up claim against Groesbeck National Bank. My son, L. L. Brown, conducted most of the receivership business for me; he was an employe of the Groesbeck Oil Company, and continued after its failure in Mr. Oliver's employment for a while. Think he attended to some of Mr. Oliver's business during the time he worked for me as receiver. I had no interest in any of the banks; knew it was customary for banks to use deposits; did not think about the money being safer on special deposit; I would not have placed the money in the hands of any individual in this county whom I knew to be absolutely solvent; thought bank proper place, and thought them perfectly safe. Since failure I have declared 4 percent dividend, and have about one thousand dollars left."

The interveners in the receivership matter, on July 27, 1904, recovered judgment for their respective claims, and judgment was rendered against Oliver & Allen to the effect that they take nothing.

There was no direction given by the court to Brown as to what disposition he should make of the money. In deference to the verdict of the jury we conclude Brown discharged his duties as receiver with ordinary care.

The appellant complains of the court in charging the jury that, "Among the duties the receiver is bound to discharge is to use ordinary care and diligence to safely keep the funds that come into his possession, and the only question for you to determine under the testimony, is whether or not he used such care and diligence in placing and keeping said money in said banks."

The contention is that it was the receiver's duty to have deposited the money coming into his hands with the court, as required by article

1462, Revised Statutes, which provides: "Whenever, during the progress of any cause, any money . . . shall be deposited with the court, to await the result of any legal proceeding, the officer having custody thereof shall seal up the identical money . . . in a secure package and deposit it in some safe or bank vault, keeping it always accessible to the court." We are of the opinion that this article has no reference to the funds coming into the hands of the receiver. It relates specially to money deposited in court to abide the result of legal proceedings. The funds received by a receiver are held by him in the course of the administration of property, under the control of the court. In defining his powers the statute provides that he "shall have power, under control of the court . . . to take charge and keep possession of the property, to receive rents, collect, compound for, compromise demands," etc.

The statute in reference to receivers seems to contemplate the receiver shall be the custodian of the fund and handle it in connection with the administration and nowhere specifies how money shall be kept by him, other than that he shall be subject to the orders of the court. The condition of his bond, as prescribed by statute is that "he will faithfully discharge all of the duties of receiver in the action (naming it) and obey the orders of the court therein." No order was made by the court with reference to this fund. The receiver is not an insurer of the safety of the property, but the measure of his responsibility is analogous to that of guardian and administrator, and when he uses ordinary care in his duties, that is, such care as an ordinarily prudent person would use in the handling of his own property, he has fulfilled the measure of his duty as such. (Murph v. McCullough, 14 Texas Ct. Rep., 176; Hamm v. Stone Stock Co., 13 Texas Civ. App., 414; Hamm v. Stock Co., 18 Texas Civ. App., 241; Finley v. Merriman, 39 Texas, 56; People v. Faulkner, 14 N. E. Rep., 415; Johnson v. Fleming, 50 S. W. Rep., 855; State v. Copeland, 34 S. W. Rep., 427.) We are of the opinion that the instructions of the court were proper.

The court rejected the evidence to the effect that L. L. Brown would not permit the attorneys of interveners to examine the books of the compress company, or give them any information about the affairs of the mill, it being shown that the receiver had employed L. L. Brown to assist him, and he had possession of the books. This evidence relates only to the acts of L. L. Brown, and his acts in this particular should not be chargeable to W. P. Brown, unless L. L. Brown was acting under the instructions of W. P. Brown in such refusal, or he knew of it and ratified such conduct. The rejection of such evidence was harmless as it was shown that interveners had to procure an order from the court to be allowed to inspect the books, which was done. Besides, its materiality is doubtful as it does not tend to show the failure to exercise ordinary care on the part of W. P. Brown in relation to said deposits.

It is urged the court erred in refusing, as requested by appellants, to charge the jury "to return a verdict for interveners." We think this instruction was properly refused. The evidence was such that the issue if ordinary care on the part of W. P. Brown, as receiver, was duly exercised, was raised and the court properly submitted it to the jury for their determination.

The defendants by the testimony of several witnesses, whose testimony

was not attempted to be contradicted, showed that the banks in which said deposits were placed were considered and recognized by the public as perfectly solvent and the managers thereof reliable. And it was also shown that Rod Oliver was regarded by the public as solvent and a man of financial ability. Before the failure of said banks there was not a rumor affecting their solvency or responsibility, so far as the evidence shows, and when the failure came it was a great surprise to every one. We think the evidence was sufficient to warrant the verdict and judgment and it will be affirmed.

On November 10, 1906, this cause was set down for submission. On November 8, 1906, appellants filed a supplemental brief presenting five additional assignments of error, which were not embraced in the original brief. The appellees move to strike out, or that we should not consider said brief, because filed too late for them to reply before date for submission. The transcript was filed March 26, 1906, but counsel for appellees agreed to give appellants till fall to prepare and file briefs, which they filed on November 6, 1906, and appellees filed their brief November 8, 1906. We think appellees' counsel were liberal enough in granting time, and appellants not showing a sufficient excuse for not embracing the assignments in their original brief, the supplemental briefs will be stricken out and not considered by us. We will add, however, that the points raised in the supplemental brief are practically covered by the eleventh assignment in original brief, which we have discussed. The judgment is affirmed.

*Affirmed.*

Writ of error refused.