**HARRISON et al. v. COUTRET.**

No. 11059.

Court of Civil Appeals of Texas. San Antonio.

Dec. 10, 1941.

Rehearing Denied Jan. 7, 1942.

John C. North, of Corpus Christi, for appellants.

Wesley E. Seale, Johns, McCampbell & Moller, and Kleberg, Eckhardt & Lowe, all of Corpus Christi, for appellee.

MURRAY, Justice.

This suit was instituted by Henry Coutret, as trustee in bankruptcy of the estate of Leo L. Emmert and Tom Emmert, who did business as the Alice Refining Company and Emmert Petroleum Company, against Ralph B. Harrison and Fidelity & Deposit Company of Maryland, a corporation, seeking to recover the sum of $21,000, as damages alleged to have resulted from the acts and omissions of Ralph B. Harrison while serving as receiver of the estates of Leo L. Emmert and Tom Emmert, and the sum of $5,000 from the Fidelity & Deposit Company of Maryland, as surety on the bond of Harrison as such trustee.

Judgment was rendered based upon the jury's answers to the special issues submitted in favor of Henry Coutret, as such trustee, against Ralph B. Harrison and Fidelity and Deposit Company of Maryland, jointly and severally, in the sum of $5,000, and against Ralph B. Harrison, individually, in the additional sum of $8,518.92.

Afterwards Henry Coutret, as such trustee, filed a remittitur which had the effect of remitting the sum of $5,259.46 of that part of the judgment recovered against Ralph B. Harrison, individually.

From this judgment Ralph B. Harrison and Fidelity and Deposit Company of Maryland have prosecuted this appeal.

Appellants first contend that the court erred in overruling their motion for an instructed verdict. Appellant Harrison was appointed receiver by an order of the 28th District Court of Nueces County giving him very broad powers in conducting the businesses belonging to the Emmerts. This order read in part as follows:

"It is therefore here now ordered, adjudged and decreed by the Court that Ralph B. Harrison be, and he is hereby appointed receiver of all and singular the business and partnership property of defendants, Leo L. Emmert, Tom Emmert and R. J. E. Hicks, partners operating and doing business under the names of Emmert's Petroleum Company and Alice Refining Company, including the Bulk Station located in Corpus Christi, Nueces County, Texas, and the refinery located in the City of Alice, in Jim Wells County, Texas, and all machinery, fixtures, equipments, goods, wares and merchandise contained in, or a part of, said Bulk Station and refinery or used in the operation thereof, wheresoever situated, including all trucks, supplies, and all other property, real, personal or mixed, and that said receiver take immediate possession, charge and control of all such partnership property of said defendants, including all assets, money in bank and on hand, the books of account, contracts and documents owned by and pertaining to said Emmert's Petroleum Company and Alice Refining Company, with full authority to carry on and conduct the business of such partnerships under the orders and directions of this Court or the Judge thereof, and to receive and collect all monies and other properties and effects belonging to said defendants as partners or to which they are entitled, with full and complete authority to operate said Bulk Station and refinery

and keep same intact as going concerns and to buy such supplies, goods, wares and merchandise as are reasonably necessary in the operation thereof and to sell, in the usual course of business, such goods, wares and merchandise, including the products of such refinery; and to hold the proceeds arising from the operation of such businesses subject to the orders of this Court, except so much thereof as may be necessary to conduct such operations and businesses; that said receiver be, and he is hereby, required to take a full and complete inventory of the partnership properties of said defendants doing business as Emmert's Petroleum Company and Alice Refining Company, and to ascertain and list such partnership liabilities, matured or to mature, as soon as practicable and make report thereof to this Court within thirty days from this date; that said receiver be, and he is hereby authorized to employ such help and assistance as by him may be deemed necessary and advisable in the administration, conduct and operation of such businesses; that he be and he is hereby authorized and empowered to compromise, adjust and settle all claims and demands against said partnership upon terms to be approved by this Court, to collect and receive all claims, demands, accounts and choses in action belonging thereto and to that end to bring such actions or suits as to him may seem necessary and proper, and to incur such expense in the conduct and management of the affairs of such businesses as may be reasonable and necessary;

"That said receiver be, and he is hereby vested with all such other and further powers and authorities as may be necessary or required in the performance of his duties as such receiver, whether herein specifically conferred or not."

■ We conclude that this order authorized Harrison to do everything which he is shown to have done, and, having acted within the authority given him in the order appointing him, he is not responsible for any loss which may have accrued, unless he acted in bad faith or failed to use ordinary care and discretion in the management of the business.

■ It is true that before Harrison accepted the appointment as receiver the Emmerts promised him a twenty-five per cent interest in the business "if he could pull it through," but this fact alone, while improper, is not enough to show that he was guilty of bad faith in his transactions.

■ On March 20, 1935, an order was entered by the 28th District Court directing and requiring Harrison, as receiver, to open a special bank account and to deposit therein each day the amount of State and Federal taxes imposed by law on each gallon of gasoline and other taxable fuels sold by him, as receiver, on the previous day. Harrison did not obey this order but deposited such tax money in the general account. Before the receivership was terminated all Federal and State taxes were paid in full. The evidence does not show that the estate suffered any loss by reason of Harrison's failure to open such account and keep the tax money deposited therein. Appellee contends that if Harrison had kept the tax money separate it would have been compelled to shut down the business sooner, and, as it was being run at a loss, the estate would have benefited thereby. This contention is not supported by the evidence but is merely a speculation. There is nothing to show that Harrison could not have continued the business as long as he did even though he had kept the tax money in a separate account. Harrison testified that a Mrs. Hoffman was considering executing a personal bond guaranteeing the payment of the taxes, and as an inducement to her to sign this bond he had the court order made with reference to the separate account, but when Mrs. Hoffman still refused to sign the bond he did not consider it necessary to carry the separate account. Regardless of why Harrison did not obey this order, the evidence fails to show that such failure caused a loss to the estate.

■ The evidence shows that Harrison spent several thousand dollars in making repairs and additions to the plant. Harrison applied to the court for leave to borrow $7,500 from one Jack Casey and stated $1,000 of this money was for improvements to the refinery. The court granted this request. However, the fact that the court thus expressly allowed the expenditure of $1,000 for permanent improvements did not preclude the idea that Harrison could expend other money for other improvements and repairs necessary for the proper carrying on of the business. It was shown that damage by a fire rendered it necessary to expend about $1,000 for repairs and improvements. The order appointing Harrison gave him sufficient authority to make this improvement and these repairs without calling the matter to the attention of the court and asking for further orders.

Harrison was appointed receiver on March 6, 1941, but did not get the refinery operating until about March 20th. He shut the plant down on about June 5th, when he discovered it was being operated at a considerable loss, due, to some extent, to the fact that the price of gasoline had declined while the price of crude oil had remained the same. He only operated the business for some two and one-half months. It was losing money when he took it over and it is not surprising that it continued to lose money under the receivership, especially since the price of gasoline steadily declined.

The evidence was insufficient to support a judgment against Harrison and the surety on his bond, and the trial court erred in overruling appellants' motion for an instructed verdict.

The judgment will be reversed and judgment here rendered that appellee take nothing.