**Roman Merker ALPERT and Renee Picazo, Next Friend of Daniel Alpert, Appellants,**

v.

**Karen S. GERSTNER, Individually and as Receiver for the Roman Merker Alpert Trust, the Daniel James Alpert Trust, and the Robert Alpert 1996 Children's Trust, and Davis Ridout Jones & Gerstner, L.L.P., Appellees.**

No. 01–05–00418–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 31, 2006.

Claudia Wilson Frost, J. Brett Busby, Mayer, Brown, Rowe & Maw LLP, Houston, for Appellant.

Joseph S. Horrigan, Horrigan & Goehrs, L.L.P., Robert Myrick Browning, Houston, for Appellee.

Panel consists of Justices JENNINGS, ALCALA, and PRICE.*

## OPINION

TERRY JENNINGS, Justice.

Appellants, Roman Merker Alpert and Renee Picazo, next friend of Daniel Alpert (collectively, "the beneficiaries"), challenge the trial court's rendition of summary judgment in favor of appellees, Karen S. Gerstner ("Gerstner"), individually and as receiver for the Roman Merker Alpert Trust, the Daniel James Alpert Trust, and the Robert Alpert 1996 Children's Trust (the "Trusts"), and Davis Ridout Jones & Gerstner, L.L.P. ("Davis Ridout"), in the beneficiaries' suit against Gerstner and Davis Ridout for breach of fiduciary duty. In three issues, the beneficiaries contend that the district court erred in ordering the case transferred to the statutory probate court and that the probate court erred in granting appellees' summary judgment motion on the grounds that their claims against Gerstner are barred by judicial immunity and that Davis Ridout did not owe them a fiduciary duty.

We reverse and remand the case for proceedings consistent with this opinion.

## Factual and Procedural Background

The Alperts and Picazo are beneficiaries of three Trusts: the Roman Merker Alpert Trust, the Daniel James Alpert Trust, and the Robert Alpert 1996 Children's Trust. Prior to the filing of the instant suit, a dispute arose regarding who was the proper trustee of the Trusts. Mark Riley, a non-party to this appeal, filed suit in Harris County Statutory Probate Court Number 2 (referred to hereafter as "the underlying suit"), asserting that he was the trustee of the Trusts.[1] The beneficiaries intervened in the underlying suit, seeking either a declaration that Riley was not the trustee of the Trusts or an order removing Riley as trustee.

On January 14, 2000, pursuant to section 64.001 of the Texas Civil Practice and Remedies Code,[2] the probate court, on its own motion, appointed Gerstner as receiver for each of the Trusts "so that there will be no loss or material injury to the

---

* The Honorable Frank Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment

1. The underlying suit was styled *Mark A. Riley v. Robert Alpert*, No. 305232, in the Probate Court No. 2 of Harris County, Texas.

2. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 64.001 (Vernon Supp.2005).

Trust[s] pending the determination of the proper trustee of the Trust[s] and the resolution of this suit." [3] The orders appointing Gerstner provided:

. . . .

 (iii) that [the Receiver] shall take charge and keep possession of all property of the Trust[s] in compliance with section 64.031 of the Texas Civil Practice & Remedies Code;

 (iv) that, pursuant to section 64.031(5), the Receiver shall have the same powers and duties as a trustee appointed pursuant to the terms of the Indenture of Trust creating the Trust[s], specifically including, but not limited to, the power to invest the properties of the Trust[s], to sell properties of the Trust[s], to pay debts and expenses attributable to the Trust[s], to file income tax returns and, as appropriate, amended income tax returns for the Trust[s], to pay any and all taxes due with respect to the Trust[s], and to receive any and all tax refunds due the Trust[s];

 (v) that the Receiver shall be entitled to exercise the powers of a trustee granted above without prior approval by this Court or any party to this litigation;

 (vi) that the Receiver shall maintain appropriate books and records for the Trust[s] and shall provide periodic reports . . .;

 (vii) that the Receiver shall, immediately upon qualification, have the right and power to take charge and keep possession of any property of the Trust[s], including, but not limited to, any property of the Trust[s] held in an account at any bank, brokerage firm, or other financial institution . . .;

. . . .

Shortly after appointing Gerstner, the probate court approved Gerstner's application to retain her law firm, Davis Ridout, "to assist the Receiver in the administration of her duties, and as a means to minimize the cost of [the Receiver's] services to the Trusts."

On July 25, 2003 and November 7, 2003, the probate court entered orders accepting Gerstner's resignation as receiver of the Trusts, subject to the court's approval of Gerstner's final accountings. Gerstner also requested a judicial discharge. The beneficiaries opposed Gerstner's requests on the grounds that the probate court did not have jurisdiction to rule on Gerstner's liability and that Gerstner acted in direct violation of the probate court's directives. The beneficiaries also objected to the fees sought by Gerstner and "the other professionals."

In May 2004, the beneficiaries filed in district court the instant suit against Gerstner and Davis Ridout for breach of fiduciary duty, alleging that "[d]uring the more than three years that Gerstner was receiver" for the Trusts and that "as a result of Gerstner's failure to take any action to protect the stock portfolio assets of the Trusts, including, but not limited to, her failure to seek and/or take advice regarding diversification of, purchasing and selling the stock portfolios or otherwise make any prudent changes in stock invest-

---

**3.** The order further stated the parties agreed to the appointment of Gerstner, who was "qualified to serve as a receiver under section 64.021 of the Texas Civil Practice and Remedies Code." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 64.021(a) (Vernon 1997) ("To be appointed as a receiver for property that is located entirely or partly in this state, a person must: (1) be a citizen and qualified voter of this state at the time of the appointment; and (2) not be a party, attorney, or other person interested in the action for appointment of a receiver.").

ments of the Trusts," the stock portfolios of the Trusts declined in value from approximately $600,000 to $13,000. They also alleged that Gerstner "breached her fiduciary duties resulting from her acceptance of her position as Receiver by failing to preserve and protect the assets of the Trusts" and "by failing to exercise the powers of a trustee as required by the order." Specifically, the beneficiaries alleged that Gerstner "failed to act prudently with respect to decisions regarding the merger of one of the companies owned by the Trusts," "failed to collect monies owed to the Trusts," and failed to provide the beneficiaries with quarterly reports.

In regard to Davis Ridout, the beneficiaries alleged that Davis Ridout "performed Receivership duties in conjunction with Gerstner" and failed to monitor Gerstner's activities. They also alleged that Davis Ridout, "as attorney for the Trusts, breached its fiduciary duties" to the beneficiaries "by failing to act with the utmost fairness and in good faith, failing to inform [the beneficiaries] of all material facts and provide full disclosure, charging the Trusts for unnecessary legal fees and failing to act with loyalty and good faith in controlling and monitoring the activities as Gerstner as Receiver."

In response to the petition filed in district court, appellees filed a motion to transfer venue, a plea in abatement, and an answer. In their motion to transfer venue, appellees stated that they reserved the right to seek transfer of the case to the statutory probate court based on local rules, Chapter 15 of the Texas Civil Practice & Remedies Code,[4] and "other rules." In an amended plea in abatement, appellees requested that the district court "abate and dismiss [the beneficiaries'] suit against them because these claims should only be asserted within [the probate

court]." Appellees asserted that abatement was mandatory because (1) the beneficiaries had not fulfilled a condition precedent in bringing their suit in that they had not obtained permission from the probate court to sue Gerstner in her individual capacity in the district court, and (2) the probate court had dominant jurisdiction over the claims asserted in the district court. Alternatively, appellees asserted that permissive abatement was appropriate based on concerns of "comity, convenience, and the necessity for orderly procedure in the trial of contested issues."

In their response to appellees' plea, the beneficiaries asserted that it was not necessary to obtain the permission of the probate court to sue Gerstner in district court and that the district court had dominant jurisdiction over the breach of fiduciary claim because it was filed first in that court. The district court never ruled on appellees' plea in abatement. Instead, on August 20, 2004, the district court entered an order transferring the case to the probate court. The district court's order did not explain the basis or the authority for the transfer and did not discuss any of the arguments presented in appellees' plea in abatement or in the beneficiaries' responses to the plea in abatement.

Following transfer, the lawsuit originally filed in district court appears to have proceeded on a "sub-docket" of the probate court. The record indicates that the probate court subsequently created a new cause number and assigned to that number "all claims brought by or against the receiver relating to the performance of her duties as the receiver or for fees and expenses of the receiver as well as any professional fees incurred on behalf of the receiver."

---

4. *See* TEX. CIV. PRAC. & REM. CODE ANN. § ·15.001–100 (Vernon 2002 & Supp.2005).

After the district court transferred the suit to the probate court, appellees filed a summary judgment motion in the probate court suit, contending that any claims asserted against Gerstner for actions taken by her as receiver for the Trusts were barred by judicial immunity. Appellees further contended that, to the extent the beneficiaries asserted that Davis Ridout acted as a receiver, judicial immunity also applied to bar those claims. Finally, appellees argued that any claims against Davis Ridout for breach of fiduciary duty failed as a matter of law because "no fiduciary duty existed." Appellees attached to their summary judgment motion the affidavit of Gerstner, in which she testified that the probate court appointed her as the receiver for the Trusts, that she served as the receiver until late 2003, that during this time "the [c]ourt, through [her], controlled the Trusts," that she "was granted authority by [the][c]ourt to hire [her] former law firm, [Davis Ridout], as [her] attorneys related to [her] activities as Receiver," and that in 2003 she and Davis Ridout resigned from their "respective roles … subject to the approval of the final accountings and discharge by the probate court."

The beneficiaries filed two responses to appellees' summary judgment motion. They argued that Gerstner was not protected by judicial immunity because the claims against Gerstner were based on her failure to perform her duties and obligations as a trustee for the Trusts, not on her "judicial functions." The beneficiaries also argued that Davis Ridout owed them fiduciary duties. After a hearing, the trial court granted appellees' summary judg-

ment motion and struck certain evidence presented by the beneficiaries. The trial court also severed the breach of fiduciary duty claims, making the trial court's order as to those claims final and appealable.

### Transfer

In their first issue, the beneficiaries contend that the district court erred in ordering the case transferred to the probate court, the transfer order should be vacated, and this case should be returned to the district court for consideration of the plea in abatement or, as necessary, the merits. The beneficiaries note that transfer of a case is not a proper remedy for a plea in abatement and that there is no authority supporting the district court's transfer of the case.[5] They assert that the statutes and rules cited in appellees' motion to transfer venue do not authorize the district court's transfer of the case to the probate court.

Appellees argue that the beneficiaries "waived any issues related to the transfer of this case from the district court to the probate court because they failed to make an objection, request, or motion to the district court or probate court stating the grounds of their complaint." In response, the beneficiaries emphasize our sister court's pronouncement in *Polk v. Southwest Crossing Homeowners Ass'n,* that "[i]f a district court transfers a case that substantively does not qualify for transfer, the court that receives the improperly transferred case lacks jurisdiction and the error is reversible on appeal." 165 S.W.3d 89, 94 (Tex.App.—Houston [14th Dist.] 2005, pet. denied).

---

**5.** Because the district court did not rule on the plea in abatement, and nothing in the record indicates that the district court considered the arguments raised in the plea in abatement when entering the order transferring the district court suit to the probate court, we do not consider the parties' extensive briefing concerning the merits of appellees' plea in abatement. Instead, we first address whether the district court had any authority to transfer the case to the probate court.

■ We agree that an order transferring a case that falls outside the jurisdictional limits of the receiving court would be reversible error, regardless of whether a party made a timely complaint concerning the transfer. Alternatively, appellees argue that the district court did not err in transferring the case because "transfer was proper under the district court's broad discretion," that transfers between district courts and statutory county courts are permissible, and that, under the pertinent local rule, any case may be transferred from one court to another.

■ The Texas Constitution and the Texas Rules of Civil Procedure expressly provide for the transfer of cases from one district court to another district court. Section 11 of article V of the Texas Constitution provides that "[d]istrict judges may exchange districts, or hold courts for each other." TEX. CONST. art. V, § 11. Texas Rule of Civil Procedure 330(e) states that "[w]here in such county there are two or more district courts having civil jurisdiction, the judges of such courts may, in their discretion, exchange benches or districts from time to time, and may transfer cases and other proceedings from one court to another." TEX. R. CIV. P. 330(e). Accordingly, Texas courts have concluded that "[t]rial courts have broad discretion to exchange benches or transfer cases." *In re Houston Lighting & Power Co.*, 976 S.W.2d 671, 672 (Tex.1998) (citing *European Crossroads' Shopping Ctr., Ltd. v. Criswell*, 910 S.W.2d 45, 52 (Tex.App.—Dallas 1995, writ denied)). Moreover, a party does not have a protected proprietary interest in having its case resolved by a particular district judge or court within the county of filing. *See Polk*, 165 S.W.3d at 93; *In re Rio Grande Valley Gas Co.*, 987 S.W.2d 167, 173 (Tex.App.—Corpus Christi 1999, no pet.); *Criswell*, 910 S.W.2d at 51. However, a trial court's discretion to transfer cases is not unlimited. *In re Rio Grande Valley Gas Co.*, 987 S.W.2d at 176.

Section 74.093 of the Texas Government Code provides that district and statutory county court judges shall adopt local rules of administration providing for, among other things, the assignment, docketing, and transfer of cases, subject to the jurisdictional limitations of the district courts and statutory county courts.[6] TEX. GOV'T CODE ANN. § 74.093 (Vernon 2005); *see also Polk*, 165 S.W.3d at 93 ("Counties may adopt local rules to further govern the transfer of cases from one district court to another if they are not inconsistent" with the rules.); *In re Stark*, 126 S.W.3d 635, 639 (Tex.App.—Beaumont 2004, orig. proceeding [mand. denied]) ("District and statutory county court judges in each county of this state may adopt local rules of administration that provide for the transfer of all cases, subject to jurisdictional limitations of those courts."); *In re Rio Grande Valley Gas Co.*, 987 S.W.2d at 176 ("District courts are statutorily mandated to adopt local rules of administration which provide for rules governing transfer of cases."). Section 74.093 further provides that "[r]ules relating to the transfer of cases or proceedings shall not allow the transfer of cases from one court to another unless the cases are with-

---

6. The Government Code provides for a local administrative district judge in each county and a local administrative statutory county court judge in each county that has a statutory county court. *See* TEX. GOV'T CODE ANN. §§ 74.091, 74.0911 (Vernon 2005). The local administrative judge implements and executes the local rules of administration, including the assignment, docketing, transfer, and hearing of cases. *See* TEX. GOV'T CODE ANN. § 74.092 (Vernon 2005); *In re Stark*, 126 S.W.3d 635, 639 (Tex.App.—Beaumont 2004, orig. proceeding [mand. denied] ).

in the jurisdiction of the court to which it is transferred." TEX. GOV'T CODE ANN. § 74.093.

Based on these provisions of the Government Code, courts have held that a district court, where authorized by a local rule, may transfer a case to a statutory county court when that court has jurisdiction over the subject matter of the dispute. *In re Siemens Corp.*, 153 S.W.3d 694, 697 (Tex.App.—Dallas 2005, no pet.) ("Section 74.093 authorizes the adoption of local rules of administration providing for the transfer of cases from district courts in Dallas County to statutory county courts in Dallas County."); *see also In re Stark*, 126 S.W.3d at 639 (holding that section 74.093 authorizes transfers between district court and statutory county courts of county when authorized by local rules).

Local rule 3.2.5 of the Harris County District Courts further provides:

> Agreement: Any case may be transferred from one court to another court by written order of the Administrative Judge of the Civil Trial Division or by written order of the judge of the court from which the case is transferred; provided, however, that in the latter instance the transfer must be with the written consent of the court to which the case is transferred.

HARRIS (TEX.) CIV. DIST. CT. LOC. R. 3.2.5.[7] The beneficiaries assert that this rule does not expressly authorize a transfer of a case from a district court to a statutory probate court. They also note that local rule 3.1 requires that a case filed in the civil trial division "shall be assigned randomly to the docket of one of the courts in that Division" and that the case remains on that court's docket unless transferred "to another court by written order of the Administrative Judge of the Civil Trial Division or by written order of the judge of the court from which the case is transferred." *See id.*; HARRIS (TEX.) CIV. DIST. CT. LOC. R. 3.1. The beneficiaries argue that, because rule 3.1 limits the assignment of cases filed in the civil trial division to a civil district court, rather than a statutory county court or a statutory probate court, transfers to "another court" pursuant to rule 3.2.5 are similarly limited to a district court rather than to a statutory county court.

That interpretation of rule 3.2.5, however, would impose an unstated limitation on the scope of a district court's authority to transfer a case when appropriate. Rule 3.2.5 expressly provides for the transfer of any case "from one court to another court," either by written order of the administrative judge or by written order of the judge of the court from which the case is transferred. The local rule's only express requirements are that a district court must enter a written order transferring the case, and it must obtain the written consent of the court to which the case is being transferred.[8]

---

**7.** The Rules of the Civil Trial Division for Harris County District Courts also authorize the Administrative Judge of the Civil Trial Division to transfer certain types of cases. For example, the local rules provide that "[a]ny claim for relief based upon a prior judgment shall be assigned to the court of original judgment" and that "[a]ny matter filed after a non-suit, dismissal for want of prosecution, or other disposition of a previous filing involving substantially-related parties and claims shall be assigned by the Adminis-

trative Judge of the Civil Trial Division to the court where the prior matter was pending." HARRIS (TEX.) CIV. DIST. CT. LOC. RS. 3.2.1 and 3.2.2.

**8.** In considering appellees' arguments, we consider the language of the local rules addressed by our sister courts in considering whether, when authorized by local rule, a district court may transfer a case to a statutory county court. In *In re Siemens Corp.*, 153 S.W.3d 694, 697 (Tex.App.—Dallas 2005, no

■ Although the district court here entered a written order transferring the lawsuit to the probate court, the record does not contain the probate court's written consent to the transfer. However, as noted by our sister court in *Polk*, the requirement for written consent is procedural, not substantive, and "a failure to comply with [a] local rule's *procedural* requirement does not deprive a court of its jurisdiction." 165 S.W.3d at 94. Accordingly, we hold that the district court did not err in ordering the case transferred to the probate court and deny the beneficiaries' request to vacate the transfer order.

We overrule the beneficiaries' first issue.

### Judicial Immunity

In their second issue, the beneficiaries contend that, as a receiver with all the powers and benefits of a trustee, Gerstner is not judicially immune from their breach of fiduciary duty claim. The beneficiaries assert that a receiver appointed to act as a fiduciary is not performing a normal judicial function and that providing Gerstner with immunity is not justified by overriding policy considerations. The beneficiaries also reject, as too simplistic, a rule that would render all court-appointed receivers absolutely immune from all liability for conduct taken during the course of their receivership appointment.

■ To prevail on a summary judgment motion, a movant has the burden of proving that it is entitled to judgment as a matter of law and that there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995). We may affirm a summary judgment only when the record shows that a movant has disproved at least one element of each of the plaintiff's claims or has established all of the elements of an affirmative defense as to each claim. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). We must accept as true evidence in favor of the nonmovant and indulge every reasonable inference and resolve all doubts in favor of the nonmovant. *Cathey*, 900 S.W.2d at 341. When, as in this case, a defendant moves for summary judgment based on its own affirmative defense, the defendant has the burden of proving each element of its defense as a matter of law. *See Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). A summary judgment must stand or fall on the grounds expressly presented in the motion. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339–41 (Tex. 1993).

■ An officer of a court who is entitled to the protection of derived judicial immunity "receives the same immunity as a judge acting in his or her official judicial capacity—absolute immunity from liability for judicial acts performed within the scope of jurisdiction." *Dallas County v. Halsey*, 87 S.W.3d 552, 554 (Tex.2002). The policy reasons for judicial immunity,

pet.), the Dallas County local rule stated, "Whenever any pending case is so related to another case previously filed in or disposed of by another Court of Dallas County having subject matter jurisdiction that a transfer of the later case to such other Court would facilitate orderly and efficient disposition of the litigation, the Judge of the Court in which the earlier case is or was pending may, upon notice to all affected parties and Courts and hearing, transfer the later case to such Court." (citing DALLAS (TEX.) CIV. DIST.

CT. LOC. R. 1.06). In *In re Stark*, 126 S.W.3d at 639, the Orange County local rule stated, "whenever any pending case is so related to another case pending in or dismissed by another court that a transfer of the case to another court would facilitate orderly and efficient disposition of the litigation, the judge may, upon motion and notice, including his own motion, transfer the case to the court in which the earlier case was filed." (citing ORANGE (TEX.) CIV. DIST. CT. LOC. R. 1.15).

to protect both the individual judge as well as the public's interest in an independent judiciary, "are also implicated when a judge delegates or appoints another person to perform services for the court or when a person otherwise serves as an officer of the court." *Id.* In such a case, "the immunity attaching to the judge follows the delegation, appointment, or court employment," and the person appointed to perform services for the court or serving as an officer of the court "also enjoys absolute immunity, known as derived judicial immunity." *Id.* The policy underlying derived judicial immunity "guarantee[s] an independent, disinterested decision-making process" and "prevent[s] the harassment and intimidation that might otherwise result if disgruntled litigants could vent their anger by suing either the person who presented the decision maker with adverse information, or the person or persons who rendered an adverse opinion." *Delcourt v. Silverman,* 919 S.W.2d 777, 782 (Tex. App.—Houston [14th Dist.] 1996, writ denied).

 Texas courts use a functional approach in determining whether a person is entitled to the protection of derived judicial immunity. *See Halsey,* 87 S.W.3d at 554–57; *B.K. v. Cox,* 116 S.W.3d 351, 357 (Tex.App.—Houston [14th Dist.] 2003, no pet.); *Delcourt,* 919 S.W.2d at 782; *Ramirez v. Burnside & Rishebarger, L.L.C.,* No. 04–04–00160–CV, 2005 WL 1812595 (Tex.App.—San Antonio Aug.3, 2005, no pet.) (memo op.). This approach focuses on whether the person seeking immunity is "intimately associated with the judicial process and if that person exercises discretionary judgment comparable to that of the judge." *Halsey,* 87 S.W.3d at 554 (citing *Delcourt,* 919 S.W.2d at 782). Officers of the court who are integral parts of the judicial process, "such as court clerks, law clerks, bailiffs, constables issuing

writs, and court-appointed receivers and trustees are entitled to judicial immunity *if they actually function as an arm of the court.*" *Delcourt,* 919 S.W.2d at 781 (emphasis added); *see also Byrd v. Woodruff,* 891 S.W.2d 689, 708 (Tex.App.—Dallas 1994, writ dism'd by agrm.) (stating that "judicial officers granted absolute immunity, such as court clerks, law clerks, bailiffs, constables issuing writs, and court-appointed receivers and trustees," are accountable to appointing court and act at discretion of appointing court). In short, we look at the nature of the function performed, not the identity of the actor, and consider "whether the court officer's conduct is like that of the delegating or appointing judge." *Halsey,* 87 S.W.3d at 555. Whether a court-appointed receiver with powers similar to those of Gerstner is entitled to derived judicial immunity for the performance of those powers is one of first impression. Accordingly, we consider how Texas courts have applied the functional approach in a number of contexts.

In *Halsey,* the supreme court addressed whether a court reporter was absolutely immune from liability for errors committed in the preparation of a court reporter's record. 87 S.W.3d at 553. The county sued the reporter seeking to recover its payment to her. *Id.* The supreme court held that "because court reporters do not engage in a discretionary function or exercise judgment comparable to that of a judge while preparing a reporter's record, they are not entitled to derived judicial immunity for that function." *Id.* The court noted that preparation of the record did "not necessitate the use of discretion, but is more in the nature of a ministerial or administrative task." *Id.* at 557.

In *Clements v. Barnes,* the supreme court recognized that a court-appointed interim bankruptcy trustee was entitled to derived judicial immunity. 834 S.W.2d 45,

46 (Tex.1992). The trustee, who had been appointed by a bankruptcy court, was alleged to have wrongfully claimed ownership of some property and tortiously interfered with the sale the property. *Id.* Noting that other courts had held that bankruptcy trustees function as "arms of the court" and are immune from liability for actions grounded in their conduct as trustees, the court held that the trustee was protected from liability by derived judicial immunity. *Id.* The court further stated that a trustee loses derived judicial immunity only when the trustee acts in "the clear absence of all her jurisdiction" and "outside the scope of her authority." *Id.; see also City of Houston v. West Capital Fin. Servs. Corp.,* 961 S.W.2d 687, 689 (Tex.App.—Houston [1st Dist.] 1998, pet. dism'd w.o.j.) ("Judges enjoy absolute judicial immunity from liability for judicial acts, no matter how erroneous the act or how evil the motive, unless the act is performed in the clear absence of all jurisdiction.").

In *B.K.,* our sister court considered whether a hospital and a doctor were entitled to derived judicial immunity for claims based on their alleged failure to report suspected child abuse discovered during the performance of psychological examinations ordered by the trial court. 116 S.W.3d at 355–56. The court determined that the doctor and hospital assisted the court in performing "a judicial function of evaluating this family in an effort to determine custody issues" and that they were acting "within the scope of the [trial court's] order because their acts—whether negligent or not-related to the family's evaluation." *Id.* at 358. The court concluded that the hospital and doctor were entitled to derived judicial immunity. *Id.*

Similarly, in *Delcourt,* the same court held that a psychologist appointed by a court to meet with family members in a custody dispute was entitled to the protection of derived judicial immunity for tort claims arising out of her participation in the case. 919 S.W.2d at 782–83. The court noted that, without such immunity, mental health professionals would be reluctant to accept such appointments and judges would be inhibited from performing their duties. *Id.* at 783. The court also held, in the same case, that a guardian ad litem appointed under the Family Code to represent the best interests of the child and provide the court with impartial recommendations was entitled to derived judicial immunity for actions taken within the scope of his appointment, provided that the appointment contemplated the ad litem's acting as an "extension of the court." *Id.* at 783–86.

In *Ramirez,* a memorandum opinion, the San Antonio Court of Appeals held that a court-appointed receiver was immune from liability for claims that she falsely represented the condition of a house purchased from the receivership estate. 2005 WL 1812595, at *1. In support of its holding, the *Ramirez* court stated that a "receiver is an agent of the court." *Id.* (citing *Spigener v. Wallis,* 80 S.W.3d 174, 183 (Tex. App.—Waco 2002, no pet.)). The order appointing the receiver empowered the receiver "to determine actual or potential claimants and to maintain and preserve the property" and, in his sole discretion, to "sell, negotiate, transfer, or redeem" property. *Id.* at *1–2. The court concluded that "[t]he receiver's role in selling the property was to assist the receivership court in performing its duties," that the trial court granted the receiver broad discretion, and that, under the functional approach, the receiver was entitled to derived judicial immunity. *Id.* The court rejected the argument that the receiver was not empowered to "make false promises" concerning the condition of property by noting that

[o]nce an individual is cloaked with derived judicial immunity because of a particular function being performed for a court, every action taken with regard to that function—whether good or bad, honest or dishonest, well-intentioned or not—is immune from suit.... Once applied to the function, the cloak of immunity covers all acts, both good and bad.

*Id.* at *2 (citing *B.K.,* 116 S.W.3d at 357).

The beneficiaries agree with the general principles of the functional approach applied in the above cases, but assert that the facts presented in this case are distinguishable and that Gerstner was not acting "as an arm of the court" when performing her duties. They refer us to *Byrd,* in which the Dallas Court of Appeals concluded that a guardian ad litem appointed under Texas Rule of Civil Procedure 173 to represent a minor during settlement proceedings served as a personal representative for the minor. 891 S.W.2d at 707–08. Because the ad litem represented the minor's interests, the ad litem was not entitled to derived judicial immunity for breach of his duty to the minor. *Id.* In support of its holding, the court noted that the ad litem was not an agent of court, had no delegated authority to act in the name of the court, and, aside from removing the ad litem, the court had no discretion to control the ad litem's actions. *Id.* at 708.

In support of their argument that Gerstner is not entitled to derived judicial immunity in her capacity as a trustee in this case, the beneficiaries rely on *Southwest Guaranty Trust Co. v. Providence Trust Co.,* 970 S.W.2d 777 (Tex.App.—Austin 1998, pet. denied), and *Edwards v. Pena,* 38 S.W.3d 191, 196 (Tex.App.—Corpus Christi 2001, no pet.). These cases more narrowly apply the concept of derived judicial immunity and suggest that a receiver or trustee, like Gerstner, would not be absolutely immune from liability for her failure to properly manage or invest trust property subject to the receivership.

In *Southwest Guaranty,* a trial court appointed a trustee and authorized that trustee to exercise its discretion in purchasing a type of annuity "that would best serve the minor plaintiffs according to the terms of the trust." 970 S.W.2d at 780. A successor trustee brought suit against the court-appointed trustee, alleging that the trustee had breached its fiduciary duty to the beneficiaries of the trusts and committed negligence in "failing to properly exercise its investment and disbursement discretion" and "failing to properly invest, manage, and diversify the trusts' assets." *Id.* at 781. The Austin Court of Appeals agreed that the trustee "was acting at the discretion" of the court, but noted that the order appointing the trustee afforded the trustee considerable discretion in purchasing the appropriate type of annuity based on a number of factors, including the age of the beneficiaries. *Id.* at 782–83. Although the trustee argued that it had acted reasonably and in good faith in purchasing the annuities, the court noted that questions of reasonableness or negligence are generally for the jury to decide. *Id.* Thus, the court refused to hold, as a matter of law, that the trustee was entitled to derived judicial immunity. *Id.* at 783.

In *Edwards,* a guardian appointed by the court alleged that all of his actions taken as guardian were protected by judicial immunity. 38 S.W.3d at 196. The Corpus Christi Court of Appeals rejected this claim, stating that "[i]n the case of a guardian, the activities undertaken are not functions of the court." *Id.* The court further noted that a "guardian takes possession of a ward's property and manages the estate of the ward as a prudent person would manage" his own property, and that "[p]ossessing and managing property are not activities generally undertaken by

courts." *Id.* Thus, the court held "that the guardian was not entitled to the protection of absolute judicial immunity." *Id.*

Two older cases from the Texas Courts of Civil Appeals also suggest that a receiver, like Gerstner, may be liable for losses or damage arising out of a failure to exercise good faith or ordinary care in managing the assets of a receivership and would not be entitled, as a matter of law, to absolute derived judicial immunity for actions taken as receiver. For example, in *Harrison v. Coutret,* suit was brought against a court-appointed receiver for damages "alleged to have resulted from the acts and omissions of [the receiver] while serving as receiver of the estates." 157 S.W.2d 454, 455 (Tex.Civ.App.—San Antonio 1941, writ ref'd w.o.m). The jury found for the plaintiffs, and the receiver contended on appeal that the trial court erred in denying his motion for instructed verdict. *Id.* In reversing the trial court's judgment against the receiver, the court noted that the order appointing the receiver provided the receiver with very broad powers in conducting the businesses belonging to the estate and that the order authorized the receiver to do everything he did. *Id.* at 455–56. However, the court concluded that "having acted within the authority given him in the order appointing him, he is not responsible for any loss which may have accrued, *unless he acted in bad faith or failed to use ordinary care and discretion in the management of the business.*" *Id.* at 456 (emphasis added).

Similarly, in *Groesbeck Cotton Oil Gin & Compress Co. v. Oliver,* suit was brought against a court-appointed receiver alleging that the receiver was grossly negligent in allowing money to remain in banks that failed. 44 Tex.Civ.App. 303, 97 S.W. 1092, 1093 (Tex.Civ.App.—1906, writ ref'd). The jury found that the receiver discharged his duties with ordinary care. *Id.* at 1094–95.

The plaintiffs complained about the jury charge, which stated that "among the duties the receiver is bound to discharge is to use ordinary care and diligence to safely keep the funds that come into his possession, and the only question for you to determine under the testimony is whether or not he used such care and diligence in placing and keeping said money in said banks." *Id.* In determining whether this charge was proper, the court considered the statute that empowered receivers to "take charge and keep possession of the property, to receive rents, collect, compound for, compromise demands, etc." *Id.* at 1094. The court stated

The statute in reference to receivers seems to contemplate that the receiver shall be the custodian of the fund and handle it in connection with the administration[ ] and nowhere specifies how money shall be kept by him, other than that he shall be subject to the orders of the court. The condition of his bond, as prescribed by statute, is that "he will faithfully discharge all of the duties of receiver in the action ... and obey the orders of the court therein." No order was made by the court with reference to the fund. The receiver is not an insurer of the safety of the property, but the measure of his responsibility is analogous to that of guardian and administrator, and, *when he uses ordinary care in his duties—that is, such care as an ordinarily prudent person would use in the handling of his own property—he has fulfilled the measure of his duty as such.*

*Id.* (emphasis added).

The parties have referred us to a number of federal cases that address derived judicial immunity. However, the cited federal cases do not provide any guidance on the scope of derived judicial immunity af-

forded to receivers with powers and duties similar to those held by Gerstner.

Moreover, none of the above Texas cases squarely addresses how derived judicial immunity interplays with any duty a receiver owes to conduct a receivership in good faith or use ordinary care and discretion in the management of trust assets subject to the receivership. Gerstner argues that, as long as she was acting within the scope of her authority, she is entitled to immunity, apparently regardless of whether she exercised good faith and ordinary care in the performance of her duties. The beneficiaries, of course, dispute this proposed application of derived judicial immunity. Because our focus is on the functions actually performed by Gerstner, not her title, *see Halsey*, 87 S.W.3d at 556, a review of her powers and duties as a receiver for the Trusts is in order.

The Texas Civil Practice and Remedies Code provides that a court may appoint a receiver in "an action by a creditor to subject any property or fund to his claim," "an action between partners or others jointly owning or interested in any property or fund," and "in any other case in which a receiver may be appointed under the rules of equity." TEX. CIV. PRAC. & REM. CODE ANN. § 64.001(2), (3), (6) (Vernon Supp.2005). The code further provides, "[s]ubject to the control of the court, a receiver may: (1) take charge and keep possession of the property; (2) receive rents; (3) collect and compromise demands; (4) make transfers; and (5) perform other acts in regard to the property as authorized by the court." TEX. CIV. PRAC. & REM. CODE ANN. § 64.031 (Vernon 1997). Here, the probate court was presented with a dispute concerning the proper trustee of the Trusts. The court, on its own motion, found that it would be "in the best interest of the beneficiaries" to appoint a receiver to administer the properties of the Trusts and, as

authorized by the Texas Civil Practice and Remedies Code, appointed Gerstner as receiver for each of the Trusts in order to prevent "loss or material injury to the Trust[s] pending the determination of the proper trustee of the Trust[s] and the resolution of thus suit." The parties agreed to Gerstner's appointment, and the court authorized her to, among other things "take charge and keep possession of all property of the Trust[s]" and further provided that Gerstner "shall have the same powers and duties as a trustee appointed pursuant to the terms of the Indenture of Trust creating the Trust[s]," specifically including, but not limited to, "the power to invest the properties of the Trust[s]." The order also authorized Gerstner to exercise her powers "without prior approval by this Court or any party to this litigation."

The trial court afforded Gerstner broad discretion, but the primary focus of our inquiry is on whether the functions performed by Gerstner were "intimately associated with the judicial process" and whether her discretion was "comparable to that of a judge." *Halsey*, 87 S.W.3d at 554. Under the functional approach, we hold that Gerstner is entitled to derived judicial immunity to the extent that she was authorized, as a receiver of the property in the Trusts, to take charge and keep possession of the Trust property in accordance with section 64.031 of the Texas Civil Practice & Remedies Code, and to the extent that she was appointed to assist the court in determining the proper trustee of the Trusts and to make an inventory of the property subject to the receivership. These functions are intimately associated with the judicial process and involve the exercise of discretionary judgment comparable to that of a judge. *See Halsey*, 87 S.W.3d at 554.

However, we further hold that Gerstner is not entitled to derived judicial immunity

to the extent that she may have breached any fiduciary duties to the beneficiaries in failing to exercise good faith or ordinary care in protecting the stock portfolio assets of the Trusts. In this latter capacity, Gerstner was acting as a representative of the interests of the beneficiaries and not as an agent of the Court. *See Byrd,* 891 S.W.2d at 707; *see also See Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 674 (Tex. 1998) (fiduciary duties arise in trustee relationships); *Hoenig v. Tex. Commerce Bank,* 939 S.W.2d 656, 661 (Tex.App.—San Antonio 1996, no writ) (noting duty to properly manage, supervise, and safeguard trust property); *Herschbach v. City of Corpus Christi,* 883 S.W.2d 720, 735 (Tex. App.—Corpus Christi 1994, writ denied) (noting duty of good faith, fair dealing, loyalty, and fidelity over trust's affairs and its principal); TEX. PROP. CODE ANN. § 113.051 (Vernon Supp.2005) (stating that "[t]he trustee shall administer the trust in good faith according to its terms and this subtitle").

We recognize that, according to the terms of the appointing orders and the Texas Civil Practice & Remedies Code, Gerstner was "subject to the control of the court" and was accountable to the court, and we presume that the court could have removed Gerstner at any time. We cannot say, however, that her functions concern-ing the investment and management of a stock portfolio are intimately associated with the judicial process or that, when performing these functions, Gerstner was acting as the functional equivalent of a judge. *See Halsey,* 87 S.W.3d at 557 (noting that in preparing record, court reporter does not participate in judicial decision making process and thus court reporter "cannot be construed as the functional equivalent of a judge"); *Edwards,* 38 S.W.3d at 196 ("[p]ossessing and managing property are not activities generally undertaken by courts"); *City of Houston,* 961 S.W.2d at 690 ("key consideration in determining whether an officer is entitled to judicial immunity is whether the officer's conduct is a normal function of the delegating or appointing judge"). Thus, even though Gerstner was appointed by the court and was acting pursuant to a court order, these facts alone do not conclusively establish her entitlement to derived judicial immunity for all of her functions as receiver.[9] *See Southwest Guar.,* 970 S.W.2d at 782–83.

Accordingly, we hold that the trial court erred in granting summary judgment in favor of Gerstner on the beneficiaries' claim related to her fiduciary duties to properly manage and invest trust property.[10]

We sustain the beneficiaries' second issue.

9. We note that if the beneficiaries' breach of fiduciary duty claim against Gerstner was barred by the doctrine of derived judicial immunity, the beneficiaries would have no recourse for any alleged "acts of incompetence or bad faith" committed by Gerstner in the management of the Trusts stock portfolio. *See Byrd,* 891 S.W.2d at 708. That would be an extremely harsh and absurd result, especially considering the fact that the trial court appointed Gerstner as receiver "in the best interest of the beneficiaries" and that, prior to the entry of the receivership, the beneficiaries would have had a cause of action against the trustee of the Trusts for her alleged "acts of incompetence or bad faith."

10. The beneficiaries attach, in an appendix to their brief, the findings of fact and conclusions of law and the final judgment entered by the probate court after the probate court granted appellees' summary judgment motion and severed the claims disposed of by the summary judgment in a separate action. In the findings of fact, the court stated that "the decisions made by the receiver with respect to the management of the assets of the Trusts were made after consultation with knowledgeable persons in the business of evaluating

### Fiduciary Duty of Attorney
### for Receiver

In their third issue, the beneficiaries contend that the trial court erred in granting Davis Ridout summary judgment on the ground that it did not owe the beneficiaries a fiduciary duty. Davis Ridout, citing *Thompson v. Vinson & Elkins,* argues that it owed no fiduciary duty to the beneficiaries. *See* 859 S.W.2d 617, 624 (Tex.App.—Houston [1st Dist.] 1993, writ denied) ("Although a fiduciary relationship may exist between the beneficiary of a trust and a trustee, under the facts presented here, no fiduciary relationship exists between the beneficiary of the trust and *the attorney representing the trustee.*").

In their petition, the beneficiaries alleged that Davis Ridout "performed receivership duties in conjunction with Gerstner" and failed to monitor her activities. The beneficiaries further alleged that Davis Ridout, "as attorney for the Trusts, breached its fiduciary duties" to the beneficiaries "by failing to act with the utmost fairness and in good faith, failing to inform [the beneficiaries] of all material facts and provide full disclosure, charging the Trusts for unnecessary legal fees and failing to act with loyalty and good faith in controlling and monitoring the activities of Gerstner as receiver."

Davis Ridout's sole ground in its summary judgment motion was that it was retained "solely to represent Gerstner in her capacity as receiver," and therefore "did not owe the beneficiaries any duty." Davis Ridout attached to its summary judgment motion testimony of Gerstner that she "was granted authority by [the probate court] to hire [her] former law firm, Davis Ridout, as [her] attorneys related to her activities as Receiver."

However, the order approving Gerstner's application to retain counsel also states that Gerstner was authorized to retain Davis Ridout "to assist in the administration of the Trusts." In their response to Davis Ridout's summary judgment motion, the beneficiaries asserted that Gerstner and Davis Ridout blurred any distinction between their roles. They also presented evidence that Gerstner had filed applications for fees with the probate court that stated that such fees were "for services performed by me and members of my firm in the administration of my duties as Receiver" of the Trusts.

In contrast to the plaintiffs in *Thompson,* the beneficiaries have presented summary judgment evidence raising a fact issue as to whether Davis Ridout was retained to work on behalf of the beneficiaries, providing receivership services, or legal services on behalf of Gerstner. Davis Ridout failed to conclusively establish as a matter of law that it owed no fiduciary duties to the beneficiaries. 859 S.W.2d at 624. Accordingly, we hold that the trial court erred in granting summary judgment on the beneficiaries' breach of fiduciary duty claims against Davis Ridout.

We sustain the beneficiaries' third issue.

### Conclusion

We reverse the case and remand for proceedings consistent with this opinion.

---

such transactions" and that "in the administration and management of the Trusts, the receiver acted in good faith, and exercised at least the same degree of discretion in discharging her duties as a prudent person would ordinarily exercise in managing his or her own affairs." Because the findings of fact and conclusions of law and the final judgment are not before this court in the instant appeal, we do not consider them.