02-10-211-CV















 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-10-00211-CV 

 

 


 
 
 Coye Conner
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Jose Miguel Guemez
 
 
  
 
 
 APPELLEE 
 
 


 

 

------------

 

FROM THE
17th District Court OF Tarrant
COUNTY

------------

MEMORANDUM
OPINION[1]

----------

Appellee
Jose Miguel Guemez filed for divorce in November 2004 from his former wife,
Maria Guemez.  Their marital estate
included a chain of grocery stores named “La Mexicana.”  During the divorce proceedings, the trial
court granted a motion to appoint a receiver to take possession of and maintain
the receivership property, including the stores.

On or
around August 22, 2006, the trial judge telephoned Coye Conner from her
chambers in the presence of the attorneys for both of the Guemezes, asking Mr. Conner
to serve as receiver.  Mr. Conner
testified in an affidavit that he told the court he was “tentatively
interested” and requested to speak with counsel for each side to obtain more
information.  Mr. Conner further stated
that he conferred with counsel “a few weeks later,” and after several more days
of contemplation, agreed to the appointment. 
On September 22, 2006, Mr. Conner received official notification of his
appointment by way of the court’s order, signed the same day, but noting an
effective date of August 23, 2006.  He
posted his statutorily required bond “a few days later.”

Meanwhile,
on August 23, 2006, the trial court held a hearing on Maria Guemez’s request
for a temporary injunction.  Both the
Guemezes were present.  The court granted
the injunction against Mr. Guemez and ordered that,
“effective immediately,” Mr. Guemez was enjoined from, among other things,

7.  Incurring any indebtedness, other than for
inventory and the day-to-day operations of [the stores].

 

8.  Making withdrawals from any checking or
savings account . . . in the names of
[the stores] for any purpose, other than for payment of vendors, payroll, and
the day-to-day operations of their usual business.

 

9.  Spending any sum of cash in any account in the
names of [the stores] for any purpose, other than for payment of vendors, payroll,
and the day-to-day operations of their usual business.

 

Around
this time, Mr. Guemez stopped attending to store business, apparently on the
advice of his attorney, who told him a receiver had been appointed and that Mr.
Guemez should not go back to the stores. 
Between late August and mid-September 2006, the stores fell into
disrepair.  The employees had not been
paid and had left.  Mr. Conner said the
stores had been stripped of their inventory and two stores had meat rotting on
the shelves.  The city of Arlington issued
citations for various code violations on September 18 and 20, including failing
to discard contaminated food, failing to control pests, and leaving the stores
vacant and unsecure.  Mr. Conner
determined there was approximately $100,000 in operational debts to unpaid
vendors.

Because
of the state of the stores, Mr. Conner decided he could not sell them as going business
concerns, but could only sell them as real estate.  Mr. Conner recounted various difficulties in
getting the financial records and books for the stores, but based on an
appraisal done by the Guemezes in April 2006, the value of the stores was
estimated at $3,550,000.  He filed his
first report with the court on October 26, 2006, and moved for authority to sell
the stores on November 17.

The
trial court conducted a hearing on December 1, 2006, during which Mr. Guemez
and other third parties submitted bids. 
Mr. Guemez was not the highest bidder and the court approved the sale of
the stores to a third party for $4,200,000.

Mr.
Guemez filed the instant case against Mr. Conner and Mr. Guemez’s counsel for
his divorce.  As to Mr. Conner, Mr.
Guemez alleged that Mr. Conner breached his fiduciary duty by failing to
protect the assets of the estate and failing to maximize their value.  Mr. Guemez claimed that Mr. Conner was effectively
appointed as receiver on August 23, as stated in the court’s order, but abused
his position by waiting to take control of the stores until after the order was
signed on September 22, 2006.  It is
because of Mr. Conner’s delay, Mr. Guemez argued, that the stores were
abandoned, and the employees and vendors were unpaid.

Mr.
Conner filed a traditional and no evidence summary judgment motion.  In his motion, he argued that because the
court did not render the order appointing him as receiver until September 22,
the stores stopped operating before Mr. Conner’s appointment and he was
therefore not liable.  Further, Mr.
Conner claimed that, as the court-appointed receiver, he was protected by derived
judicial immunity.  The trial court
denied Mr. Conner’s motion, and he then filed this appeal.[2]  Because Mr. Conner could not act as receiver
until the court ordered him to do so, and because we hold that derived judicial
immunity applies, we reverse the trial court’s ruling and render judgment that
Mr. Guemez take nothing by his suit against Mr.
Conner.

Standard
of Review

We
review a summary judgment de novo.  Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,
289 S.W.3d 844, 848 (Tex. 2009). 
We consider the evidence presented in the light most favorable to the
nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors
could, and disregarding evidence contrary to the nonmovant unless reasonable
jurors could not.  Id.  We indulge every reasonable inference and
resolve any doubts in the nonmovant’s favor. 
20801, Inc. v. Parker, 249 S.W.3d 392, 399
(Tex. 2008).  A defendant is
entitled to summary judgment on an affirmative defense if the defendant
conclusively proves all the elements of the affirmative defense.  Chau v. Riddle, 254 S.W.3d 453, 455
(Tex. 2008); see Tex. R. Civ. P. 166a(b),
(c).  To accomplish this, the
defendant-movant must present summary judgment evidence that establishes each
element of the affirmative defense as a matter of law.  Ryland Group, Inc. v.
Hood, 924 S.W.2d 120, 121 (Tex. 1996).

A
party is not entitled to summary judgment under rule 166a(i)
when he has the burden of proof at trial. 
See Tex. R. Civ. P. 166a(i); Doyal v. Tex. Dept. of Criminal Justice,
276 S.W.3d 530, 537 (Tex. App.—Waco 2008, no pet.) (holding
that immunity is an affirmative defense and therefore not proper grounds for a
no-evidence motion for summary judgment). 
Because Mr. Conner appeals the court’s denial of his motion for summary
judgment only on the issue of judicial immunity, we will only consider his
motion for traditional summary judgment.

Discussion

I.   Derived
Judicial Immunity

Mr.
Conner’s sole issue on appeal is whether the court erred in denying his motion
for summary judgment because he is protected by derived judicial immunity.  When entitled to derived
judicial immunity, a person appointed to perform services for the court receives
the same absolute immunity from liability as a judge acting in his or her
official capacity.  Dallas County v. Halsey, 87 S.W.3d 552,
554 (Tex. 2002).  Judicial immunity
can attach to certain nonjudges because the policy reasons for judicial
immunity-protection of individual judges and of the public’s interest in an
independent judiciary are also implicated when judges delegate their authority,
appoint another to perform services for the court, or allow another to
otherwise serve as an officer of the court.  Id.  In those circumstances, the immunity attaching
to the judge follows the delegation, appointment, or court employment.  Id.  The person acting in such a capacity thus also
enjoys absolute immunity, which is known as derived judicial immunity.  Id.

Texas
employs a “functional approach” to determine whether someone is entitled to
derived judicial immunity.  Id. at 554.  This approach “looks to whether the person
seeking immunity is intimately associated with the judicial process” and
whether “that person exercises discretionary judgment comparable to that of the
judge.”  Id. (citing Delcourt v.
Silverman, 919 S.W.2d 777, 782 (Tex. App.—Houston [14th Dist.] 1996, writ
denied)).  The functional approach looks
to the nature of the function performed, not the identity of the actor, and
considers whether the court officer’s conduct is like that of the delegating or
appointing judge.  Id. at 555.

Mr.
Guemez relies on Alpert v. Gerstner,
232 S.W.3d 117 (Tex. App.—Houston [1st Dist.] 2006, pet. denied), for his
proposition that Mr. Conner was functioning as a trustee, not as an extension
of the court.[3]  In Alpert,
the court had appointed Gerstner as a receiver for the plaintiffs’ trusts and
granted him “the same powers and duties as a trustee.”  Id. at 119–20.  The Alpert plaintiffs argued that Gerstner
should not be immune from various acts because they were not normal judicial
functions.  Id. at 125.  The court determined that Gerstner was
entitled to judicial immunity for some acts and not for others.  That is, Gerstner was entitled to immunity “to
the extent that she was authorized, as a receiver of the property in the
Trusts, to take charge and keep possession of the Trust property.”  Id. at 130.  But as to
her actions regarding investing and managing the stock portfolios, “Gerstner
was acting as a representative of the interests of the beneficiaries and not as
an agent of the Court.”  Id. at 131.  The court went on to cite a number of cases,
all discussing the fiduciary duty that arises out of a trustee
relationship—not, it is worth noting, arising out of a receivership.  Id. at 131.

One
of the cases Alpert cites and
distinguishes is Ramirez v. Burnside
& Rishebarger, L.L.C., No. 04-04-00160-CV, 2005 WL 1812595 (Tex.
App.—San Antonio Aug. 3, 2005, no pet.) (mem.
op.).  In Ramirez, the plaintiff complained that the receiver falsely
represented the condition of a house the plaintiff purchased from the
estate.  Id. at *1.  The court held that the language of the
order, which allowed the receiver to “sell, negotiate, transfer or redeem any .
. . real property” of the estate, was a broad grant of power and the receiver
was immune for all acts associated with that duty, including “mak[ing] false
promises to third parties concerning the property.”  Id. at *2.  The
language of the order granting Mr. Conner his powers of receiver much more
closely resembles that of the Ramirez
order than that of the Alpert
order.  See Alpert, 232 S.W.3d at 130 (distinguishing Ramirez and other cases because they do not “squarely [address] how
derived judicial immunity interplays with any duty a receiver owes . . . in the management of trust assets”).

In Alpert, the fiduciary duty owed by the
receiver to the beneficiaries was not created by her appointment as receiver,
but through the grant of power as trustee. 
Here, the complained-of actions and omissions all fall squarely under
the authority delegated to Mr. Conner by the order appointing him
receiver.  The sale of the stores was
also approved by the court in a later order, providing further evidence that
Mr. Conner’s role was as an arm of the court. 
See Rehabworks, LLC v. Flanagan, No. 03-07-00552-CV, 2009 WL 483207, at
*3 (Tex. App.—Austin 2009, pet. denied) (mem. op.) (holding
judicial immunity applied because all of the complained of acts “were done
within the context of the receivership action, which was ultimately overseen by
the trial court and subject to the court’s further rulings”).

Mr.
Conner proved as a matter of law that all of his acts and omissions of which
Mr. Guemez complains were done in his capacity as a receiver and, thus as an
arm of the court.  Because Mr. Conner was
functioning as an arm of the court, he is protected by derived judicial
immunity.  See Halsey, 87 S.W.3d at 554.  Mr.
Conner was thus entitled to summary judgment for any acts in his capacity as
receiver based on his affirmative defense of derived judicial immunity.

II.  Date
of Appointment

Mr.
Guemez argues that the appointment became effective on August 23, 2006,
pursuant to the order signed September 22, 2006.  Because we have held that judicial immunity
attaches to the actions Mr. Conner took as a receiver, we will address Mr.
Guemez’s argument that the date of appointment was made retroactive by the
order.

Mr.
Guemez argues that the question of the effective date of the appointment is a
question of fact and thus, not appropriate for summary judgment.  Based upon the reasoning below, we
disagree.  The parties do not dispute the
basic facts.  The question of what act by
the court appointed Mr. Conner as receiver (and thus, the date of appointment)
is one of law.  See Meyer v. Cathey, 167
S.W.3d 327, 330 (Tex. 2005) (“Where the underlying facts are undisputed,
determination of the existence, and breach, of fiduciary duties are questions
of law, exclusively within the province of the court.”).  Questions of law are appropriate matters for
summary judgment.  Rhone-Poulenc, Inc.
v. Steel, 997 S.W.2d 217, 222 (Tex. 1999); see also Havlen v. McDougall, 22 S.W.3d 343, 345 (Tex. 2000)
(noting summary judgment is proper when parties do not dispute the relevant
facts).

If
Mr. Guemez’s argument is that the order is ambiguous as to the date, that too is a question of law.  Shanks v. Treadway, 110 S.W. 3d 444, 447 (Tex. 2003).  An order is ambiguous if it is subject to
more than one reasonable interpretation. 
Id.  Whether there is more than one reasonable
interpretation is to be determined by reading the document as a whole.  Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983).  While we find that the order is internally
inconsistent and therefore ambiguous, the only interpretation that is
consistent with the undisputed evidence in this case and that correctly applies
the law is that the appointment became effective on the date in which the order
was signed.

The
undisputed facts are that Mr. Conner was contacted by phone on or around August
22, 2006; the order appointing him was not signed and entered until September
22, 2006; and the order states, “Effective August 23, 2006, the Court . . .
ORDERED the immediate appointment of Coye Conner as receiver.”  Mr. Conner argues, however, that he could not
have performed his duties until he had a signed order from the court granting
him the powers of receiver and, undisputedly, that did not occur until
September 22, 2006.  Mr. Guemez argues
that the effective date imposed the receiver powers and duties retroactively to
August 23, and thus, Mr. Conner was under a duty to act as of that date.

The
Texas Family Code provides that in a divorce proceeding, a court “may render an
appropriate order . . . appointing a receiver for the preservation and
protection of the property of the parties.” 
Tex. Fam. Code Ann. § 6.502(a) (Vernon 2010).  A court-appointed receiver is “an arm of the
court.”  Rehabworks, 2009 WL 483207, at *3.  “A receiver has only that authority conferred
by the Court’s order appointing him.”  Ex parte Hodges, 625
S.W.2d 304, 306 (Tex. 1981).  A
receiver cannot be liable “for not performing specific acts which he was not
ordered by the court to do.”  Id. 
The appointment of a receiver transfers the rights of the property to
the court.  See Huffmeyer v. Mann, 49
S.W.3d 554, 560 (Tex. App.—Corpus Christi 2001, no pet.) (“The title of the
receiver is of the date at which it is ordered that a receiver be
appointed.  Then the title of the parties
to control dies, and the title of the court and of its agent and officer
immediately succeeds.”).

Without
an order, there is no transfer of rights to the court and no grant of power to
the receiver to act as an agent of the court. 
The plain reading of the statute confirms that it is the order that
appoints the receiver.  Tex. Fam. Code
Ann. § 6.502(a) (“[T]he court may render
an appropriate order . . . appointing a receiver.”).  [Emphasis added.]  The order in this case states, in the present
tense, that it “hereby takes exclusive jurisdiction and possession” of the
Guemezes’ assets and that Mr. Conner “is appointed as Receiver” and “is hereby authorized
to take and have possession of” the assets in receivership.”  
The order grants the receiver power to “conduct the business operations” of the
stores “[f]rom and after the date of
entry of this Order.”  [Emphasis
added.]  The order also does not require
the receiver’s first report until “30 days after
entry of this Order.”  [Emphasis
added.]  Further, for some acts which the
receiver is allowed or required to take under the order, third parties are not
required to allow the receiver access until he has presented the order to
them.  This includes financial
institutions which do not have a duty to provide account information until and “[u]pon
presentment of [the] Order.”

Without
the directives in the written order, Mr. Conner would not have known what
actions he had been authorized to take, and no other party would have had to
assist him.  Without a written order, Mr.
Conner would have had no proof of his right to enter the stores to present to the
locksmith or his right to the financials to present to the bank.  In fact, had these parties assisted Mr.
Conner without proof of his appointment, it would have implicated a slew of other
issues, possibly including trespass or breach of the confidentiality of
financial records.

Furthermore,
on August 23, 2006—the day after the phone call to Mr. Conner—the court held a
temporary injunction hearing, at which Mr. Guemez was present.  The court rendered an order that same day
that allowed Mr. Guemez to continue to run the stores.  He was enjoined from using the stores’ money
for anything but “payment of vendors,
payroll, and the day-to-day operations,” all of the things Mr. Guemez now
attempts to blame Mr. Conner for not attending to.  Mr. Conner could only have been responsible
for the stores if the court had taken control of them.  See
Hodges, 625 S.W.2d at 306.  Yet Mr. Guemez had an injunction in hand
which left control of the stores to him. 
The court could not have simultaneously taken control of the stores and
left control with Mr. Guemez.  See Huffmeyer, 49 S.W.3d
at 560 (noting when the court takes possession of property through appointment
of a receiver, “the title of the parties to control dies, and then the title of
the court and of its agent and officer immediately succeeds”).  The court did not take possession or control
of the stores until it rendered the written order.  Until then, control remained with Mr.
Guemez.  If Mr. Guemez was told differently
by his attorney, that is an issue for Mr. Guemez and his former counsel, not
for Mr. Conner.

Mr.
Guemez presented two affidavits of expert witnesses, each claiming that Mr.
Conner was under the duties of a receiver as of August 23, 2006.[4]  Neither affidavit provides any analysis, but
merely concludes that the order imposed duties retroactively by virtue of a
reference in the order to an effective date of August 23, 2006.[5]  Neither affiant analyzed the rest of the
language of the order or conducted any statutory interpretation.  Neither cites any case law or claims
knowledge of facts supporting their belief as to the court’s intention.  Affidavits cannot be conclusory, but must set
out a reasoned basis for an opinion.  See Burrow v. Arce, 997 S.W.2d 229, 235
(Tex. 1999) (“[I]t is the basis of the witness’s opinion, and not the witness’s
qualifications or his bare opinions alone, that can settle an issue as a matter
of law; a claim will not stand or fall on the mere ipse dixit of a credentialed witness.”).

The
affidavits produced by Mr. Guemez offered no more bases for his argument that
the order have retroactive effect other than claiming
that is what the court meant.  One
affiant implies that Mr. Conner’s conversation with the court on August 23, 2006,
put him on notice that he would be granted powers of a receiver, effective
immediately, when he says, “Mr. Conner had knowledge of the duties that would
be imposed on him retroactively.”  But
the affiant does not claim to have any knowledge of what was said in chambers
on August 22, nor did Mr. Guemez provide any other evidence that Mr. Conner had
any such knowledge that powers could have been imposed retroactively until
receipt of the signed order on September 22.  See
Pettus v. Pettus, 237 S.W.3d 405, 417 n.8 (Tex. App.—Fort Worth 2007, pet.
denied) (noting that a divorce decree stating that the division of property was
effective on an earlier date than decree was signed was not the effective date
absent evidence that parties would have been aware of the court’s intention to
make the date retroactive).  These
affidavits and Mr. Guemez’s reliance on the unartful language of the order fail
to establish as a matter of law that the order retroactively appointed Mr.
Conner on August 23.

Mr.
Conner’s duties were imposed as of the date the order was signed, September 22,
2006.  Because Mr. Conner was not ordered
to perform his functions until September 22, 2006, he cannot be liable for
inaction prior to that date.

Conclusion

For
the reasons stated above, we reverse the trial court’s order and render
judgment that Mr. Guemez take nothing by his suit
against Mr. Conner.

 

 

LEE GABRIEL
JUSTICE

 

PANEL:  GARDNER, WALKER,
and GABRIEL, JJ.

 

DELIVERED:  November 24, 2010











[1]See Tex. R. App. P. 47.4.





[2]
This interlocutory appeal is permissible under the civil practice and remedies
code section 51.014(a)(5).  Tex. Civ. Prac.
& Rem. Code Ann. § 51.014; see
also Tex. R. App. P. 28.1.





[3]
The affidavit of Mr. Fernando M. Bustos, which Mr. Guemez attached to his
response to Mr. Conner’s motion for summary judgment, also claims that Alpert stands for the proposition that
receivers are not immune “from liability for actions that constitute a breach
of fiduciary duty.”  Mr. Bustos’s
affidavit does nothing more than provide his interpretation of Alpert.  However, an attorney’s reading of a case is not
sufficient to answer a question of law.  See Burrow v. Arce, 997
S.W.2d 229, 235 (Tex. 1999) (“[A] claim will not stand or fall on the mere ipse dixit of a credentialed witness.”).





[4] The
portions of the affidavits which claim to address the “standard of care” of a
receiver are irrelevant to our analysis of the date of appointment and the
application of derived judicial immunity.

 





[5]
Exemplary statements in the affidavits are:

(1)     “[B]y
voluntarily accepting his appointment, through two written orders . . . which
fixed his duties as of August 23, 2006, Mr. Conner assumed all the duties of
the receivership . . . as of August 23, 2006;” 

(2)     “By
agreeing to inherit the estate as of August 23, 2006, he accepted
responsibilities for the estate’s condition immediately after this date;”  and 

(3)     “Mr.
Conner accepted the appointment effective approximately one month earlier than
the order was signed, so his responsibilities began on that effective date of August
23, 2006.”