

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-10-00211-CV

COYE CONNER                                                        APPELLANT

V.

JOSE MIGUEL GUEMEZ                                          APPELLEE

------------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

----------

Appellee Jose Miguel Guemez filed for divorce in November 2004 from his former wife, Maria Guemez. Their marital estate included a chain of grocery stores named "La Mexicana." During the divorce proceedings, the trial court granted a motion to appoint a receiver to take possession of and maintain the receivership property, including the stores.

---

[1]*See* Tex. R. App. P. 47.4.

On or around August 22, 2006, the trial judge telephoned Coye Conner from her chambers in the presence of the attorneys for both of the Guemezes, asking Mr. Conner to serve as receiver. Mr. Conner testified in an affidavit that he told the court he was "tentatively interested" and requested to speak with counsel for each side to obtain more information. Mr. Conner further stated that he conferred with counsel "a few weeks later," and after several more days of contemplation, agreed to the appointment. On September 22, 2006, Mr. Conner received official notification of his appointment by way of the court's order, signed the same day, but noting an effective date of August 23, 2006. He posted his statutorily required bond "a few days later."

Meanwhile, on August 23, 2006, the trial court held a hearing on Maria Guemez's request for a temporary injunction. Both the Guemezes were present. The court granted the injunction against Mr. Guemez and ordered that, "effective immediately," Mr. Guemez was enjoined from, among other things,

> 7. Incurring any indebtedness, other than for inventory and the day-to-day operations of [the stores].

> 8. Making withdrawals from any checking or savings account . . . in the names of [the stores] for any purpose, other than for payment of vendors, payroll, and the day-to-day operations of their usual business.

> 9. Spending any sum of cash in any account in the names of [the stores] for any purpose, other than for payment of vendors, payroll, and the day-to-day operations of their usual business.

Around this time, Mr. Guemez stopped attending to store business, apparently on the advice of his attorney, who told him a receiver had been

2

appointed and that Mr. Guemez should not go back to the stores. Between late August and mid-September 2006, the stores fell into disrepair. The employees had not been paid and had left. Mr. Conner said the stores had been stripped of their inventory and two stores had meat rotting on the shelves. The city of Arlington issued citations for various code violations on September 18 and 20, including failing to discard contaminated food, failing to control pests, and leaving the stores vacant and unsecure. Mr. Conner determined there was approximately $100,000 in operational debts to unpaid vendors.

Because of the state of the stores, Mr. Conner decided he could not sell them as going business concerns, but could only sell them as real estate. Mr. Conner recounted various difficulties in getting the financial records and books for the stores, but based on an appraisal done by the Guemezes in April 2006, the value of the stores was estimated at $3,550,000. He filed his first report with the court on October 26, 2006, and moved for authority to sell the stores on November 17.

The trial court conducted a hearing on December 1, 2006, during which Mr. Guemez and other third parties submitted bids. Mr. Guemez was not the highest bidder and the court approved the sale of the stores to a third party for $4,200,000.

Mr. Guemez filed the instant case against Mr. Conner and Mr. Guemez's counsel for his divorce. As to Mr. Conner, Mr. Guemez alleged that Mr. Conner breached his fiduciary duty by failing to protect the assets of the estate and

3

failing to maximize their value. Mr. Guemez claimed that Mr. Conner was effectively appointed as receiver on August 23, as stated in the court's order, but abused his position by waiting to take control of the stores until after the order was signed on September 22, 2006. It is because of Mr. Conner's delay, Mr. Guemez argued, that the stores were abandoned, and the employees and vendors were unpaid.

Mr. Conner filed a traditional and no evidence summary judgment motion. In his motion, he argued that because the court did not render the order appointing him as receiver until September 22, the stores stopped operating before Mr. Conner's appointment and he was therefore not liable. Further, Mr. Conner claimed that, as the court-appointed receiver, he was protected by derived judicial immunity. The trial court denied Mr. Conner's motion, and he then filed this appeal.[2] Because Mr. Conner could not act as receiver until the court ordered him to do so, and because we hold that derived judicial immunity applies, we reverse the trial court's ruling and render judgment that Mr. Guemez take nothing by his suit against Mr. Conner.

### Standard of Review

We review a summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We consider the evidence presented in the light most favorable to the nonmovant, crediting

---

[2] This interlocutory appeal is permissible under the civil practice and remedies code section 51.014(a)(5). Tex. Civ. Prac. & Rem. Code Ann. § 51.014; *see also* Tex. R. App. P. 28.1.

4

evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Id.* We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008); *see* Tex. R. Civ. P. 166a(b), (c). To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996).

A party is not entitled to summary judgment under rule 166a(i) when he has the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i); *Doyal v. Tex. Dept. of Criminal Justice*, 276 S.W.3d 530, 537 (Tex. App.—Waco 2008, no pet.) (holding that immunity is an affirmative defense and therefore not proper grounds for a no-evidence motion for summary judgment). Because Mr. Conner appeals the court's denial of his motion for summary judgment only on the issue of judicial immunity, we will only consider his motion for traditional summary judgment.

**Discussion**

### I. Derived Judicial Immunity

Mr. Conner's sole issue on appeal is whether the court erred in denying his motion for summary judgment because he is protected by derived judicial immunity. When entitled to derived judicial immunity, a person appointed to

5

perform services for the court receives the same absolute immunity from liability as a judge acting in his or her official capacity. *Dallas County v. Halsey*, 87 S.W.3d 552, 554 (Tex. 2002). Judicial immunity can attach to certain nonjudges because the policy reasons for judicial immunity-protection of individual judges and of the public's interest in an independent judiciary are also implicated when judges delegate their authority, appoint another to perform services for the court, or allow another to otherwise serve as an officer of the court. *Id*. In those circumstances, the immunity attaching to the judge follows the delegation, appointment, or court employment. *Id*. The person acting in such a capacity thus also enjoys absolute immunity, which is known as derived judicial immunity. *Id*.

Texas employs a "functional approach" to determine whether someone is entitled to derived judicial immunity. *Id*. at 554. This approach "looks to whether the person seeking immunity is intimately associated with the judicial process" and whether "that person exercises discretionary judgment comparable to that of the judge." *Id*. (citing *Delcourt v. Silverman*, 919 S.W.2d 777, 782 (Tex. App.—Houston [14th Dist.] 1996, writ denied)). The functional approach looks to the nature of the function performed, not the identity of the actor, and considers whether the court officer's conduct is like that of the delegating or appointing judge. *Id*. at 555.

Mr. Guemez relies on *Alpert v. Gerstner*, 232 S.W.3d 117 (Tex. App.—Houston [1st Dist.] 2006, pet. denied), for his proposition that Mr. Conner was

6

functioning as a trustee, not as an extension of the court.[3]  In *Alpert*, the court had appointed Gerstner as a receiver for the plaintiffs' trusts and granted him "the same powers and duties as a trustee."  *Id*. at 119–20.  The *Alpert* plaintiffs argued that Gerstner should not be immune from various acts because they were not normal judicial functions.  *Id*. at 125.  The court determined that Gerstner was entitled to judicial immunity for some acts and not for others.  That is, Gerstner was entitled to immunity "to the extent that she was authorized, as a receiver of the property in the Trusts, to take charge and keep possession of the Trust property."  *Id*. at 130.  But as to her actions regarding investing and managing the stock portfolios, "Gerstner was acting as a representative of the interests of the beneficiaries and not as an agent of the Court."  *Id*. at 131.  The court went on to cite a number of cases, all discussing the fiduciary duty that arises out of a trustee relationship—not, it is worth noting, arising out of a receivership.  *Id*. at 131.

One of the cases *Alpert* cites and distinguishes is *Ramirez v. Burnside & Rishebarger, L.L.C.*, No. 04-04-00160-CV, 2005 WL 1812595 (Tex. App.—San Antonio Aug. 3, 2005, no pet.) (mem. op.).  In *Ramirez*, the plaintiff complained

---

[3] The affidavit of Mr. Fernando M. Bustos, which Mr. Guemez attached to his response to Mr. Conner's motion for summary judgment, also claims that *Alpert* stands for the proposition that receivers are not immune "from liability for actions that constitute a breach of fiduciary duty."  Mr. Bustos's affidavit does nothing more than provide his interpretation of *Alpert*.  However, an attorney's reading of a case is not sufficient to answer a question of law.  *See Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999) ("[A] claim will not stand or fall on the mere *ipse dixit* of a credentialed witness.").

7

that the receiver falsely represented the condition of a house the plaintiff purchased from the estate. *Id.* at *1. The court held that the language of the order, which allowed the receiver to "sell, negotiate, transfer or redeem any . . . real property" of the estate, was a broad grant of power and the receiver was immune for all acts associated with that duty, including "mak[ing] false promises to third parties concerning the property." *Id*. at *2. The language of the order granting Mr. Conner his powers of receiver much more closely resembles that of the *Ramirez* order than that of the *Alpert* order. *See Alpert*, 232 S.W.3d at 130 (distinguishing *Ramirez* and other cases because they do not "squarely [address] how derived judicial immunity interplays with any duty a receiver owes . . . in the management of trust assets").

In *Alpert*, the fiduciary duty owed by the receiver to the beneficiaries was not created by her appointment as receiver, but through the grant of power as trustee. Here, the complained-of actions and omissions all fall squarely under the authority delegated to Mr. Conner by the order appointing him receiver. The sale of the stores was also approved by the court in a later order, providing further evidence that Mr. Conner's role was as an arm of the court. *See Rehabworks, LLC v. Flanagan*, No. 03-07-00552-CV, 2009 WL 483207, at *3 (Tex. App.—Austin 2009, pet. denied) (mem. op.) (holding judicial immunity applied because all of the complained of acts "were done within the context of the receivership action, which was ultimately overseen by the trial court and subject to the court's further rulings").

8

Mr. Conner proved as a matter of law that all of his acts and omissions of which Mr. Guemez complains were done in his capacity as a receiver and, thus as an arm of the court. Because Mr. Conner was functioning as an arm of the court, he is protected by derived judicial immunity. *See Halsey*, 87 S.W.3d at 554. Mr. Conner was thus entitled to summary judgment for any acts in his capacity as receiver based on his affirmative defense of derived judicial immunity.

## II. Date of Appointment

Mr. Guemez argues that the appointment became effective on August 23, 2006, pursuant to the order signed September 22, 2006. Because we have held that judicial immunity attaches to the actions Mr. Conner took as a receiver, we will address Mr. Guemez's argument that the date of appointment was made retroactive by the order.

Mr. Guemez argues that the question of the effective date of the appointment is a question of fact and thus, not appropriate for summary judgment. Based upon the reasoning below, we disagree. The parties do not dispute the basic facts. The question of what act by the court appointed Mr. Conner as receiver (and thus, the date of appointment) is one of law. *See Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005) ("Where the underlying facts are undisputed, determination of the existence, and breach, of fiduciary duties are questions of law, exclusively within the province of the court."). Questions of law are appropriate matters for summary judgment. *Rhone-Poulenc, Inc. v. Steel*,

9

997 S.W.2d 217, 222 (Tex. 1999); *see also Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex. 2000) (noting summary judgment is proper when parties do not dispute the relevant facts).

If Mr. Guemez's argument is that the order is ambiguous as to the date, that too is a question of law. *Shanks v. Treadway*, 110 S.W. 3d 444, 447 (Tex. 2003). An order is ambiguous if it is subject to more than one reasonable interpretation. *Id*. Whether there is more than one reasonable interpretation is to be determined by reading the document as a whole. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). While we find that the order is internally inconsistent and therefore ambiguous, the only interpretation that is consistent with the undisputed evidence in this case and that correctly applies the law is that the appointment became effective on the date in which the order was signed.

The undisputed facts are that Mr. Conner was contacted by phone on or around August 22, 2006; the order appointing him was not signed and entered until September 22, 2006; and the order states, "Effective August 23, 2006, the Court . . . ORDERED the immediate appointment of Coye Conner as receiver." Mr. Conner argues, however, that he could not have performed his duties until he had a signed order from the court granting him the powers of receiver and, undisputedly, that did not occur until September 22, 2006. Mr. Guemez argues that the effective date imposed the receiver powers and duties retroactively to August 23, and thus, Mr. Conner was under a duty to act as of that date.

The Texas Family Code provides that in a divorce proceeding, a court "may render an appropriate order . . . appointing a receiver for the preservation and protection of the property of the parties." Tex. Fam. Code Ann. § 6.502(a) (Vernon 2010). A court-appointed receiver is "an arm of the court." *Rehabworks,* 2009 WL 483207, at *3. "A receiver has only that authority conferred by the Court's order appointing him." *Ex parte Hodges*, 625 S.W.2d 304, 306 (Tex. 1981). A receiver cannot be liable "for not performing specific acts which he was not ordered by the court to do." *Id*. The appointment of a receiver transfers the rights of the property to the court. *See Huffmeyer v. Mann*, 49 S.W.3d 554, 560 (Tex. App.—Corpus Christi 2001, no pet.) ("The title of the receiver is of the date at which it is ordered that a receiver be appointed. Then the title of the parties to control dies, and the title of the court and of its agent and officer immediately succeeds.")

Without an order, there is no transfer of rights to the court and no grant of power to the receiver to act as an agent of the court. The plain reading of the statute confirms that it is the order that appoints the receiver. Tex. Fam. Code Ann. § 6.502(a) ("[T]he court may *render an appropriate order* . . . appointing a receiver."). [Emphasis added.] The order in this case states, in the present tense, that it "hereby takes exclusive jurisdiction and possession" of the Guemezes' assets and that Mr. Conner "is appointed as Receiver" and "is hereby authorized to take and have possession of" the assets in receivership.

11

The order grants the receiver power to "conduct the business operations" of the stores "[f]rom and after *the date of entry of this Order*." [Emphasis added.] The order also does not require the receiver's first report until "30 days *after entry of this Order*." [Emphasis added.] Further, for some acts which the receiver is allowed or required to take under the order, third parties are not required to allow the receiver access until he has presented the order to them. This includes financial institutions which do not have a duty to provide account information until and "[u]pon presentment of [the] Order."

Without the directives in the written order, Mr. Conner would not have known what actions he had been authorized to take, and no other party would have had to assist him. Without a written order, Mr. Conner would have had no proof of his right to enter the stores to present to the locksmith or his right to the financials to present to the bank. In fact, had these parties assisted Mr. Conner without proof of his appointment, it would have implicated a slew of other issues, possibly including trespass or breach of the confidentiality of financial records.

Furthermore, on August 23, 2006—the day after the phone call to Mr. Conner—the court held a temporary injunction hearing, at which Mr. Guemez was present. The court rendered an order that same day that allowed Mr. Guemez to continue to run the stores. He was enjoined from using the stores' money for anything *but* "payment of vendors, payroll, and the day-to-day operations," all of the things Mr. Guemez now attempts to blame Mr. Conner for not attending to. Mr. Conner could only have been responsible for the stores if

12

the court had taken control of them. *See Hodges*, 625 S.W.2d at 306. Yet Mr. Guemez had an injunction in hand which left control of the stores to him. The court could not have simultaneously taken control of the stores and left control with Mr. Guemez. *See Huffmeyer*, 49 S.W.3d at 560 (noting when the court takes possession of property through appointment of a receiver, "the title of the parties to control dies, and then the title of the court and of its agent and officer immediately succeeds"). The court did not take possession or control of the stores until it rendered the written order. Until then, control remained with Mr. Guemez. If Mr. Guemez was told differently by his attorney, that is an issue for Mr. Guemez and his former counsel, not for Mr. Conner.

Mr. Guemez presented two affidavits of expert witnesses, each claiming that Mr. Conner was under the duties of a receiver as of August 23, 2006.[4] Neither affidavit provides any analysis, but merely concludes that the order imposed duties retroactively by virtue of a reference in the order to an effective date of August 23, 2006.[5] Neither affiant analyzed the rest of the language of the

---

[4] The portions of the affidavits which claim to address the "standard of care" of a receiver are irrelevant to our analysis of the date of appointment and the application of derived judicial immunity.

[5] Exemplary statements in the affidavits are:
(1) "[B]y voluntarily accepting his appointment, through two written orders . . . which fixed his duties as of August 23, 2006, Mr. Conner assumed all the duties of the receivership . . . as of August 23, 2006;"
(2) "By agreeing to inherit the estate as of August 23, 2006, he accepted responsibilities for the estate's condition immediately after this date;" and

13

order or conducted any statutory interpretation. Neither cites any case law or claims knowledge of facts supporting their belief as to the court's intention. Affidavits cannot be conclusory, but must set out a reasoned basis for an opinion. *See Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999) ("[I]t is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law; a claim will not stand or fall on the mere *ipse dixit* of a credentialed witness.").

The affidavits produced by Mr. Guemez offered no more bases for his argument that the order have retroactive effect other than claiming that is what the court meant. One affiant implies that Mr. Conner's conversation with the court on August 23, 2006, put him on notice that he would be granted powers of a receiver, effective immediately, when he says, "Mr. Conner had knowledge of the duties that would be imposed on him retroactively." But the affiant does not claim to have any knowledge of what was said in chambers on August 22, nor did Mr. Guemez provide any other evidence that Mr. Conner had any such knowledge that powers could have been imposed retroactively until receipt of the signed order on September 22. *See Pettus v. Pettus*, 237 S.W.3d 405, 417 n.8 (Tex. App.—Fort Worth 2007, pet. denied) (noting that a divorce decree stating that the division of property was effective on an earlier date than decree was signed was not the effective date absent evidence that parties would have been

(3) "Mr. Conner accepted the appointment effective approximately one month earlier than the order was signed, so his responsibilities began on that effective date of August 23, 2006."

14

aware of the court's intention to make the date retroactive).  These affidavits and Mr. Guemez's reliance on the unartful language of the order fail to establish as a matter of law that the order retroactively appointed Mr. Conner on August 23.

Mr. Conner's duties were imposed as of the date the order was signed, September 22, 2006.  Because Mr. Conner was not ordered to perform his functions until September 22, 2006, he cannot be liable for inaction prior to that date.

## Conclusion

For the reasons stated above, we reverse the trial court's order and render judgment that Mr. Guemez take nothing by his suit against Mr. Conner.

LEE GABRIEL
JUSTICE

PANEL:  GARDNER, WALKER, and GABRIEL, JJ.

DELIVERED:  November 24, 2010